**No. 25-50714**

# In the United States Court of Appeals for the Fifth Circuit

MOCTEZUMA RIVERA CASTELAN, ON BEHALF OF HIMSELF AND OTHERS SIMILARLY SITUATED,

*Plaintiff-Appellee*,

*v.*

RONNY TAYLOR,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Western District of Texas, San Antonio Division

## BRIEF FOR APPELLANT

<div style="columns:2">

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

WILLIAM R. PETERSON
Solicitor General

GARRETT C. GRAY
Assistant Attorney General
Garrett.Gray@oag.texas.gov

</div>

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697                Counsel for Defendant-Appellant

## CERTIFICATE OF INTERESTED PERSONS

No. 25-50714

MOCTEZUMA RIVERA CASTELAN, ON BEHALF OF HIMSELF AND OTHERS SIMILARLY SITUATED

*Plaintiff-Appellee*,

*v.*

RONNY TAYLOR,

*Defendant-Appellant.*

Under the fourth sentence of Fifth Circuit Rule 28.2.1, appellant, as a governmental party, need not furnish a certificate of interested persons.

/s/ Garrett C. Gray

GARRETT C. GRAY
*Counsel of Record for*
*Defendant-Appellant*

i

# STATEMENT REGARDING ORAL ARGUMENT

Defendant-Appellant Ronny Taylor respectfully requests oral argument. Taylor believes that oral argument will assist the Court in resolving the issues presented.

# TABLE OF CONTENTS

Page

Certificate of Interested Persons ................................................................................i

Statement Regarding Oral Argument .......................................................................ii

Table of Authorities ....................................................................................................v

Introduction.................................................................................................................1

Statement of Jurisdiction ...........................................................................................2

Issues Presented ..........................................................................................................2

Statement of the Case .................................................................................................2

    I.   The Appointment of Counsel Under Texas Law. ....................................2

    II.  COVID-19 and the Border Crisis Prompt Changes to the Appointment System in Affected Counties..............................................4

    III. Rivera Is Arrested in Kinney County. .......................................................7

    IV. Rivera Sues Taylor and Others. .................................................................8

Summary of the Argument........................................................................................10

Standard of Review ...................................................................................................11

Argument....................................................................................................................11

    I.   Rivera Did Not Plausibly Allege a Sixth Amendment Claim Against Taylor. ..........................................................................................12

        A.  Rivera's claim is based on a legal conclusion contradicted by Texas law. ...................................................................................13

        B.  Rivera did not plead facts plausibly showing that Taylor is liable as a supervisor...........................................................................15

            1.   Rivera did not plead facts plausibly showing that Taylor personally failed to send his paperwork to the appointment authority. ....................................................................................16

            2.   Rivera did not plead facts plausibly showing that Taylor implemented an unconstitutional policy. ...................................18

            3.   Rivera did not plead facts plausibly showing that Taylor failed to supervise or train in a deliberately indifferent manner. ....................................................................................19

    II.  Taylor is Entitled to Qualified Immunity. ..............................................21

A. Taylor acted with discretionary authority as the facility administrator of the Processing Center. ............................................22

B. Taylor did not violate Rivera's Sixth Amendment right to counsel. ................................................................................... 27

    1. The delay in appointing Rivera's counsel did not violate the Sixth Amendment. ................................................................28

    2. Rivera did not participate in a critical stage proceeding without counsel. ..................................................................29

C. Taylor did not violate clearly-established law. ...................................30

    1. No clearly-established law imposes Sixth Amendment liability on facility administrators for failing to transmit paperwork. ..............................................................................32

    2. No clearly-established law holds that a two-month delay in appointing counsel violates the Sixth Amendment. ...................33

    3. No clearly-established law holds that the absence of a bail hearing, as opposed to the conducting of a bail hearing without counsel, violates the Sixth Amendment. ........................34

    4. The alleged delay in transmitting Rivera's appointment paperwork was not objectively unreasonable...............................37

Conclusion............................................................................................ 39

Certificate of Service............................................................................40

Certificate of Compliance ....................................................................40

iv

# Table of Authorities

Page(s)

**Cases:**

*Anderson v. Estrada,*
140 F.4th 634 (5th Cir. 2025) ............................................................. 11

*Ashcroft v. al-Kidd,*
563 U.S. 731 (2011) ......................................................................... 31

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ................................................11, 12, 13, 14, 18

*Backe v. LeBlanc,*
691 F.3d 645 (5th Cir. 2012) ............................................................ 11

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) .....................................................................12, 16

*Beltran v. City of El Paso,*
367 F.3d 299 (5th Cir. 2004) ...........................................................25

*Bevill v. Fletcher,*
26 F.4th 270 (5th Cir. 2022) ............................................................24

*Booth v. Galveston County,*
352 F. Supp.3d 718 (S.D. Tex. 2019) ...............................................35

*Brosseau v. Haugen,*
543 U.S. 194 (2004) ......................................................................... 31

*Brown v. Miller,*
519 F.3d 231 (5th Cir. 2008)........................................................11, 21

*Buehler v. Dear,*
27 F.4th 969 (5th Cir. 2022).............................................................2

*Camreta v. Greene,*
563 U.S. 692 (2011).........................................................................22

*Cherry Knoll, L.L.C. v. Jones,*
922 F.3d 309 (5th Cir. 2019) ...................................................... 21, 26

*City of Lancaster v. Chambers,*
883 S.W.2d 650 (Tex. 1994).......................................23, 24, 25, 26

*County of Los Angeles v. Mendez,*
581 U.S. 420 (2017).........................................................................14

*Crittindon v. LeBlanc,*
37 F.4th 177 (5th Cir. 2022) ............................................................ 17

*Cronen v. Tex. Dep't of Hum. Servs.*,
   977 F.2d 934 (5th Cir. 1992) ..................................................................23

*Cunningham v. Castloo*,
   983 F.3d 185 (5th Cir. 2020) ............................................................31, 35

*Davis v. Scherer*,
   468 U.S. 183 (1984)................................................................23, 25, 27

*Diaz v. Cantu*,
   123 F.4th 736 (5th Cir. 2024) ...............................................................26

*District of Columbia v. Wesby*,
   583 U.S. 48 (2018) ...............................................................................22

*Douthit v. Jones*,
   619 F.2d 527 (5th Cir. 1980)................................................................25

*Gagne v. City of Galveston*,
   805 F.2d 558 (5th Cir. 1986) ..........................................................23, 25

*Gates v. Tex. Dep't of Protective & Regul. Servs.*,
   537 F.3d 404 (5th Cir. 2008) ..........................................................21, 38

*Grandstaff v. City of Borger*,
   767 F.2d 161 (5th Cir. 1985) .........................................................18, 19

*Jauch v. Choctaw County*,
   886 F.3d 534 (5th Cir. 2018) ...............................................................36

*Jones v. Lumpkin*,
   No. 23-40612, 2024 WL 1994279 (5th Cir. May 6, 2024)................................18

*King v. Baylor Univ.*,
   46 F.4th 344 (5th Cir. 2022) ...............................................................13

*Koerselman v. Rhynard*,
   875 S.W.2d 347 (Tex. App.—Corpus Christi-Edinburg 1994, no writ) ......24, 25

*Leachman v. Stephens*,
   581 Fed. App'x 390 (5th Cir. 2014)..................................................28, 29

*Lucio v. Davis*,
   751 Fed. App'x 484 (5th Cir. 2018).............................................28, 29, 34

*Malley v. Briggs*,
   475 U.S. 335 (1986) ..........................................................................31, 37

*Mason v. Faul*,
   929 F.3d 762 (5th Cir. 2019) ...........................................................37, 39

*McNeal v. LeBlanc*,
   90 F.4th 425 (5th Cir. 2024) ...............................................................16

*Morrow v. Meachum*,
  917 F.3d 870 (5th Cir. 2019) ................................................................ 30-31

*Mullenix v. Luna*,
  577 U.S. 7 (2015) ......................................................................................... 31

*Oliver v. Scott*,
  276 F.3d 736 (5th Cir. 2002) ........................................................... 15, 18, 19

*Parker v. Blackwell*,
  23 F.4th 517 (5th Cir. 2022) ....................................................... 19, 20, 22, 31

*Pearson v. Callahan*,
  555 U.S. 223 (2009) ....................................................................................22

*Porter v. Epps*,
  659 F3d 440 (5th Cir. 2011) ............................................................... 16, 20

*Rains v. Simpson*,
  50 Tex. 495 (Tex. 1878) ............................................................................ 23

*Rothgery v. Gillespie County*,
  554 U.S. 191 (2008) ............................................................................*passim*

*Saucier v. Katz*,
  533 U.S. 194 (2001) ....................................................................................32

*Scheuer v. Rhodes*,
  416 U.S. 232 (1974) ............................................................................. 25, 27

*Schneckloth v. Bustamonte*,
  412 U.S. 218 (1973) ....................................................................................30

*Sweetin v. City of Texas City*,
  48 F.4th 387 (5th Cir. 2022) ...................................................................... 23

*Taylor v. Barkes*,
  575 U.S. 822 ............................................................................................. 37

*Thompkins v. Belt*,
  828 F.2d 298 (5th Cir. 1987) ................................................................18, 19

*Thompson v. Steele*,
  709 F.2d 381 (5th Cir. 1983) ...................................................................... 15

*United States v. Ash*,
  413 U.S. 300 (1973) ............................................................................. 28, 29

*United States v. Gouveia*,
  467 U.S. 180 (1984) ............................................................................. 27, 30

*Vincent v. City of Sulphur*,
  805 F.3d 543 (5th Cir. 2015) ...................................................................... 31

*Waganfeald v. Gusman*,
  674 F.3d 475 (5th Cir. 2012) ................................................................ 32, 39
*Watkins v. Allstate Prop. & Cas. Ins.*,
  90 F.4th 814 (5th Cir. 2024) .......................................................................... 13
*Westfall v. Luna*,
  903 F.3d 534 (5th Cir. 2018) .................................................................. 19, 20
*White v. Boyte*,
  116 F.3d 1478 (5th Cir. 1997) ....................................................................... 26
*Wilson v. Layne*,
  526 U.S. 603 (1999) ........................................................................................ 31
*Zarnow v. City of Wichita Falls*,
  614 F.3d 161 (5th Cir. 2010) ......................................................................... 19

**Constitutional Provisions, Statutes, and Rules:**

U.S. Const.:
  amend. VI ......................................................................................... *passim*
  amend. XIV ............................................................................................... 36
28 U.S.C. § 1331 .............................................................................................. 2
42 U.S.C. § 1983 .................................................................................... *passim*
Tex. Code Crim. Proc. art.:
  1.051 .............................................................................................................. 3
  15.17 ...................................................................................... 2, 5, 27, 33
  15.17(a) ......................................................................................... *passim*
  17.151 ............................................................................................ *passim*
  17.151 § 1(2) ...................................................................................... 28, 34
  26.04 ....................................................................................................... 3, 14
  26.04(a) ................................................................................................... 3, 5
  26.04(b) ......................................................................................................... 5
  26.04(b)(1) .................................................................................................. 14
  26.04(c) ......................................................................................................... 5
  26.04(f-1) ...................................................................................................... 3
  26.04(h) ......................................................................................................... 5
  26.047(b) ....................................................................................................... 3
Fed. R. App. P. 4(a)(1)(A) ............................................................................. 2

# Introduction

Moctezuma Rivera Castelan was arrested for criminal trespass near the Texas-Mexico border and taken to a processing facility to be arraigned. He alleges that Ronny Taylor, who helped manage that facility, violated his Sixth Amendment right to counsel. The crux of Rivera's claim is this: Taylor was "responsible under state law" for transmitting the relevant paperwork to secure an attorney, and Taylor's delay in doing so violated the Sixth Amendment. ROA.550.

But there is a problem: no such duty exists under Texas law. And Rivera did not identify any state law saying otherwise. In fact, Texas law expressly contradicts the proposition that Taylor was "responsible under state law," ROA.550, for transmitting the relevant paperwork.

Even if such a duty existed, Taylor is entitled to qualified immunity for three reasons. First, Taylor acted within his discretion in managing the facility where Rivera's arrest was processed such that the qualified immunity analysis applies. Second, Taylor did not violate the Sixth Amendment. And finally, Rivera has not met his burden to overcome qualified immunity's clearly-established prong because he has cited no authority analogous to this case finding a Sixth Amendment violation.

## STATEMENT OF JURISDICTION

The district court had subject-matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claims arise under a federal statute, 42 U.S.C. § 1983, and the Sixth Amendment. ROA.521-22, 549-52. Appellate jurisdiction exists because this is an interlocutory appeal from the district court's denial of a motion to dismiss based on qualified immunity. ROA.1051. Accordingly, it is immediately appealable under the collateral-order doctrine. *Buehler v. Dear*, 27 F.4th 969, 979 n.4 (5th Cir. 2022). The district court entered its order denying qualified immunity on August 14, 2025, ROA.1051, and Taylor timely appealed on August 28, 2025, ROA.1052; *see* Fed. R. App. P. 4(a)(1)(A).

## ISSUES PRESENTED

1. Whether Rivera properly alleged a Sixth Amendment claim against Taylor.

2. Whether Taylor is entitled to qualified immunity on Rivera's Sixth Amendment claim.

## STATEMENT OF THE CASE

## I. The Appointment of Counsel Under Texas Law.

This case involves the appointment of counsel for indigent defendants during the COVID-19 pandemic and border crisis in recent years. In 2021, several changes were made to the appointment process.

Traditionally, Texas entrusts the appointment of counsel to judicial officers. Under the Texas Code of Criminal Procedure, an arrestee is brought before a magistrate for an initial hearing no later than forty-eight hours after the arrest is made. Tex. Code Crim. Proc. art. 15.17(a). This is often called an "article 15.17 hearing."

2

*See Rothgery v. Gillespie County*, 554 U.S. 191, 195 (2008). If an arrestee is deemed indigent and requests appointment of counsel, one of two things happens. If the magistrate is authorized to appoint counsel for indigent defendants in the county, the magistrate does so under Texas Code of Criminal Procedure Article 1.051. Tex. Code Crim. Proc. art. 15.17(a). If the magistrate is not authorized to appoint counsel, the magistrate shall, no later than twenty-four hours after the person arrested requests appointment of counsel, "transmit, or cause to be transmitted to the court or to the courts' designee authorized under Article 26.04 to appoint counsel in the county, the forms requesting the appointment of counsel." *Id.*

Article 26.04 provides the procedures that counties may use to appoint counsel. *See generally id.* art. 26.04. "The judges of the county courts, statutory county courts, and district courts trying criminal cases in each county, by local rule, shall adopt and publish written countywide procedures for timely and fairly appointing counsel for an indigent defendant . . . ." *Id.* art. 26.04(a). Counties may allow the courts to do the appointments themselves, or they may use a "managed assigned counsel program," *id.* art. 26.04(f-1), which is a "governmental entity, nonprofit corporation, or bar association" whose responsibility it is to appoint counsel for indigent defendants, *id.* art. 26.047(b).

In a county using a managed assigned counsel program, a magistrate transmits the indigent arrestee's paperwork to the managed assigned counsel program that then appoints counsel. *Id.* art. 15.17(a).

Also relevant to this appeal is Article 17.151, which provides that "a defendant who is detained in jail pending trial . . . must be released either on personal bond or

by reducing the amount of bail required, if the state is not ready for trial of the criminal action for which he is being detained" within "30 days from the commencement of his detention," but only "if he is accused of a misdemeanor punishable by a sentence of imprisonment in jail for 180 days or less." *Id.* art. 17.151.

## II. COVID-19 and the Border Crisis Prompt Changes to the Appointment System in Affected Counties.

In early 2021, counties along the Texas-Mexico border experienced a surge of illegal immigration. Kinney County, a small community of just 3,000 residents, was particularly affected. To help protect "the health, safety, and welfare of county residents," Kinney County Judge Tully Shahan issued a Declaration of Local State of Disaster. ROA.522-23. The Declaration called on Texas Governor Greg Abbott to "provide state military forces to aid in controlling the conditions in the county by assisting the County Sheriff in the enforcement of law and the preservation of the sovereignty and territorial integrity of the county." ROA.523. Other border counties soon followed suit and filed similar disaster declarations. ROA.524.

In response, Governor Abbott launched Operation Lone Star. ROA.524. Governor Abbott also invoked the Texas Disaster Act and issued a similar proclamation, "declaring a state of disaster in border counties that have, like Kinney County, issued their own local disaster declarations." ROA.524. Increased efforts were made to arrest and jail illegal immigrants, often for misdemeanor trespass, ROA.524-25, and criminal penalties for offenses committed within disaster areas were enhanced, ROA.525. The increase in arrests affected the processing of arrestees and the appointment systems of border counties.

4

The surge in illegal immigration in March 2021 coincided with the COVID-19 pandemic, which was simultaneously sweeping the Nation. Recognizing the logistical burdens faced by affected counties because of both crises, Governor Abbott and the Supreme Court of Texas each acted. Governor Abbott signed an executive order that suspended Article 17.151 "to the extent necessary to prevent any person's automatic release on personal bond because the State is not ready for trial." ROA.593. The executive order did not suspend Article 17.151's requirement that a defendant be released "by reducing the amount of bail" required if the State was not ready for trial within the relevant time period. *See* ROA.593; Tex. Code. Crim. Proc. art. 17.151.

The Supreme Court of Texas also issued an emergency order that addressed the border crisis. That order modified Articles 15.17(a) and 26.04(b), (c), and (h) "to authorize a magistrate to appoint counsel for an indigent defendant upon request at a proceeding under Article 15.17." ROA.1045. The order also modified Article 26.04(a) to authorize the Texas Indigent Defense Commission "to approve procedures for appointing counsel that differ from an affected county's procedures." ROA.586. In this way, the Executive Director of the TIDC assumed the county's role in developing appointment procedures, including procedures that involve appointments by a managed assigned counsel program. ROA.582-83.

In Kinney County, the Lubbock Private Defenders' Office ("Defenders' Office") operated as the managed assigned counsel program for indigent arrestees during Operation Lone Star. ROA.527. The appointment process generally began with

arrestees being taken to an arraignment site, the Val Verde Processing Center[1] ("Processing Center").  ROA.525-26. At the Center, arrestees appeared before a magistrate via video conference, who would inform them of the charges against them and make necessary determinations, such as whether an arrestee was indigent. ROA.526. Magistrates were authorized to either release arrestees on a personal (cashless) bond or require them to pay a monetary bond to secure their release. ROA.526. Arrestees who could not afford the bond amounts were transferred to a repurposed state prison facility. ROA.526.

Defendant-Appellant Ronny Taylor was hired by the Texas Division of Emergency Management to "help design, administer, and operate the Val Verde Processing Center." ROA.520. Taylor had previously retired from the Harris County Sheriff's Office after almost thirty-six years of service, mostly working in corrections. ROA.551. He was the facility administrator from approximately July to November 2021. ROA.520. During that time, he "was responsible for formulating, implementing, and executing policies, customs, and practices applicable to the [Val Verde Processing] Center," and "for training and supervising [its] staff." ROA.521.

Taylor operated the Processing Center with Recana Solutions, LLC, a "government contracting and staffing company." ROA.521. "From approximately September 2021 through the end of November 2021, [Taylor] operated the Center in

---

[1] The Val Verde Processing Center is near Del Rio, Texas, which is part of Val Verde County. Kinney County neighbors Val Verde County along the Texas-Mexico border. The Lubbock Private Defenders' Office is located over three-hundred miles away in northwest Texas.

conjunction with" Recana. ROA.520-21. This included Recana and Taylor "work[ing] in partnership" to develop the policies and customs for the processing center. ROA.551.

## III. Rivera Is Arrested in Kinney County.

In October 2021, Plaintiff-Appellee Moctezuma Rivera Castelan, a citizen and resident of Mexico, was arrested in Kinney County on suspicion of "Criminal Trespass in a Disaster Area," a class A misdemeanor that carries up to one year of incarceration. ROA.529. He was then transported to the Processing Center, where he appeared before a magistrate. ROA.529. Rivera could not afford the bond amount set by the magistrate, and he was transported to a state prison to be detained. ROA.530.

According to Rivera's complaint, the paperwork needed to appoint an attorney for him was not immediately sent to the Defenders' Office. ROA.530. "As the operators of the . . . Processing Center," Rivera alleges that "Taylor and Recana were responsible under state law for" doing so. ROA.550.

Eventually, the Defenders' Office requested from the Processing Center lists of individuals it processed, and in December 2021, it asked Taylor for Rivera's paperwork. ROA.531. Although by then Taylor was no longer the facility administrator of the Processing Center, ROA.520, he forwarded the request to Recana employee Brandon Kirkpatrick, who was the chief jailer at the Processing Center. ROA.531. One day later, Kirkpatrick responded to the Defenders' Office, asking what paperwork it required. ROA.531. The Defenders' Office answered Kirkpatrick's query, and three days later, Kirkpatrick sent Rivera's paperwork to the Defenders' Office. ROA.532.

7

The next day Rivera was appointed counsel, Defendant Gary Villareal. ROA.532. By this time, Rivera had been detained for seventy-six days, which he alleges to be forty-six days beyond the time that Kinney County was required to release him on a reduced bail. ROA.532.

Villareal allegedly failed to act on Rivera's case for 171 days after becoming his counsel. ROA.532. After roughly six months, Villareal was removed from Rivera's case because of deficient performance. ROA.533. Rivera then received a new lawyer who secured his release from custody five days later. ROA.533.

Rivera was not charged with a crime. ROA.534. He maintains that Kinney County lacked legal authority to detain him for 222 out of the 252 days he spent in custody. ROA.534. After being released from Kinney County custody, Rivera returned to Mexico. ROA.534.

## IV. Rivera Sues Taylor and Others.

Rivera sued Taylor, alleging that Taylor violated his Sixth Amendment right to counsel. Rivera alleges that, as "the operator[] of the Val Verde Processing Center" Taylor was "responsible under state law for sending Rivera's . . . paperwork to the appointing authority, the Lubbock Private Defenders' Office," but delayed in doing so. ROA.550. As a result, Rivera alleges that he did not receive an appointed lawyer for seventy-six days after his initial appearance (spanning from October 6, 2021, to December 21, 2021) and forty-six days after the date on which Kinney County was required to release him on bail that he could afford. ROA.550; *see* Tex. Code Crim. Proc. art. 17.151.

Rivera also alleges that Recana violated his Sixth Amendment rights and acted negligently based on the same facts as his claim against Taylor, that Kinney County violated his Due Process rights, and that his former attorney Villereal committed legal malpractice. ROA.544-53. This appeal, however, concerns only Rivera's Sixth Amendment claim against Taylor.

Taylor moved to dismiss the Sixth Amendment claim, arguing that Rivera failed to adequately plead a Sixth Amendment claim and that qualified immunity applies. ROA.560-79. The district court denied the motion without prejudice, reasoning that neither Taylor nor Rivera addressed the threshold question of whether Taylor was acting with discretionary authority. ROA.864. Taylor then filed a renewed motion to dismiss addressing the discretionary authority issue, which the district court again denied. ROA.868-79, 951-56, 1041-51. The court concluded that Taylor failed to show his challenged conduct was within the scope of his discretionary authority. ROA.1050. Under the facts alleged by Rivera, the court reasoned, Taylor had no discretion but to send the necessary paperwork to the Defenders' Office after the magistrate deemed Rivera as indigent. ROA.1049. Accordingly, the district court did not determine whether Taylor violated Rivera's Sixth Amendment rights or if he violated clearly-established law under the qualified immunity framework. ROA.1051.

Taylor now appeals the denial of his motion to dismiss. ROA.1052.

9

## Summary of the Argument

The district court erred in denying Taylor's motion to dismiss for two main reasons.

*First*, Rivera failed to state a plausible Sixth Amendment claim against Taylor. He alleges that Taylor was "responsible under state law" for ensuring his appointment paperwork was sent to the Defenders' Office, and that Taylor's delay in doing so violated his Sixth Amendment right to counsel. ROA.550. But Rivera never identifies what "state law" imposed this duty, and Texas law contradicts his legal conclusion. Because Taylor had no duty under Texas law to ensure that Rivera's appointment paperwork was sent to the Defenders' Office, he cannot be liable for the delay in transmitting Rivera's paperwork.

But even if Taylor had a duty under state law to transmit the appointment paperwork, Rivera failed to allege facts plausibly showing supervisor liability under § 1983. Rivera had to adequately plead that Taylor either personally participated in a constitutional deprivation or is liable as a supervisor. Rivera does not plead any facts showing that Taylor personally failed to transmit his paperwork, so he must show that Taylor implemented an unconstitutional policy or failed to train and supervise his subordinates. Rivera provides no facts about what relevant policy Taylor implemented or how it was unconstitutional. Nor does Rivera adequately plead that Taylor failed to supervise or train his employees.

*Second*, Taylor is entitled to qualified immunity. To begin, Taylor acted with discretionary authority in that he was the person who set up and managed the Center and created its policies. In that role, Taylor had no responsibility for the mundane

10

task of transmitting a detainee's paperwork. Moreover, Taylor did not violate Rivera's Sixth Amendment rights because Rivera was not deprived of counsel at any critical stage of his criminal case. Finally, Rivera cannot overcome qualified immunity's clearly-established prong because he has failed to cite authority finding a Sixth Amendment violation in a case analogous to this one.

## STANDARD OF REVIEW

This Court reviews a district court's denial of a motion to dismiss on qualified immunity grounds *de novo*. *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Anderson v. Estrada*, 140 F.4th 634, 641-42 (5th Cir. 2025) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). This Court accepts all well-pleaded facts as true and views them in the light most favorable to the plaintiff. *Id.* But this Court is not required to accept a plaintiff's legal conclusions, *see Iqbal*, 556 U.S. at 678-79, and a plaintiff must state facts giving rise both to a claim plausible on its face and that plausibly defeats qualified immunity with equal specificity, *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).

## ARGUMENT

The district court held that Rivera plausibly alleged a Sixth Amendment claim against Taylor under a supervisor liability theory. To reach that conclusion, the district court committed a critical error—one that, if rectified, eliminates the need for any further analysis by this Court. The district court first took an unadorned legal

11

conclusion as true—that Taylor, as the facility administrator of the Processing Center, had a duty under state law to ensure the transmittal of appointment paperwork to the Defenders' Office. It then found Rivera plausibly alleged that Taylor is liable as a supervisor for the delay in sending Rivera's appointment paperwork. But neither Rivera nor the district court cite any state law or policy supporting that conclusion, and it is contradicted by Texas law. Because Taylor had no duty under Texas law to send appointment paperwork—and nothing indicates otherwise—he necessarily cannot be liable as a supervisor for the delay in sending Rivera's paperwork. That is enough to reverse the judgment below and render judgment dismissing Taylor.

But even if this Court credits Rivera's legal conclusion and finds enough facts accompany it to state a plausible claim against Taylor, Rivera must clear the qualified immunity hurdle. He cannot do so.

## I. Rivera Did Not Plausibly Allege a Sixth Amendment Claim Against Taylor.

As a threshold matter, this Court need not reach the qualified immunity question because Rivera failed to "state a claim to relief that is plausible on its face" as to Taylor. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While this is an interlocutory appeal from the denial of qualified immunity, this Court may review the sufficiency of Rivera's pleadings under the collateral-order doctrine. *Iqbal*, 556 U.S. at 673. That is because "whether a particular complaint sufficiently alleges a clearly established violation of law cannot be decided in isolation from the facts pleaded. In that sense the sufficiency of [the] pleadings is both inextricably intertwined with, and

12

directly implicated by, the qualified-immunity defense." *Id.* (internal quotations and citations omitted).

## A. Rivera's claim is based on a legal conclusion contradicted by Texas law.

Rivera's claim against Taylor is propped up by a legal conclusion contradicted by Texas law. The crux of his claim is that "Taylor and Recana were responsible under state law" for transmitting Rivera's paperwork to the Defenders' Office, ROA.550, and because there was a delay in doing so, Rivera went seventy-six days without counsel after his initial appearance before a magistrate, ROA.550. There's a problem, though.

Rivera neither identifies a state law nor a TIDC policy specifying that under Operation Lone Star, the "facility administrator" of a processing center had a duty to ensure the transmittal of appointment paperwork. ROA.550. He merely states that Taylor had a duty to do so "under state law." ROA.550. That is precisely the sort of "conclusory statement[]" that is "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 678-79. And this Court "does not 'accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.'" *Watkins v. Allstate Prop. & Cas. Ins.*, 90 F.4th 814, 818 (5th Cir. 2024) (quoting *King v. Baylor Univ.*, 46 F.4th 344, 356 (5th Cir. 2022)). Yet the district court took it as true all the same. ROA.854.

That was error because Taylor had no duty under Texas law to ensure the transmittal of appointment paperwork. Article 15.17(a) governs appointment of counsel following a defendant's arrest. It provides that when a magistrate determines an arrestee is indigent and requests counsel, the magistrate must either (1) appoint

13

counsel immediately if authorized under Article 26.04, or (2) transmit the appointment request forms to the appropriate court or designee "without unnecessary delay, but not later than 24 hours after the person arrested requests appointment of counsel." Tex. Code Crim. Proc. art. 15.17(a). Article 26.04(b)(1) reinforces that appointment procedures shall "authorize only the judges of the county courts, statutory county courts, and district courts trying criminal cases in the county, of the judges' designees, to appoint counsel for indigent defendants in the county." Tex. Code Crim. Proc. art. 26.04(b)(1).

The Texas Supreme Court's Emergency Order—in effect when Rivera was arrested—modified Article 15.17(a) to authorize magistrates to appoint counsel directly and authorized the TIDC to modify appointment procedure. ROA.582-83. But nowhere did the Order (or other Texas law) assign a person in Taylor's position a duty to transmit appointment paperwork.

This makes sense. The Sixth Amendment does not require facility administrators to monitor whether magistrates or designated appointment authorities have fulfilled their state-law duties to appoint counsel, or to intervene when magistrates or appointment authorities fail to do so. Nor does it require every government employee to act as a guarantor of the right to counsel. Were that so, a system of cascading liability would be created whereby every official tangentially connected to criminal proceedings becomes responsible for every other official's violation. That is why § 1983 requires that the defendant "proximately cause[]" the plaintiff's injury, *County of Los Angeles v. Mendez*, 581 U.S. 420, 431 (2017), through his "own individual actions," *Iqbal*, 556 U.S. at 676. Liability does not extend to "the conduct of

14

subordinates," *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983), nor does it attach to officials who played no role in the challenged conduct.

In sum, Taylor cannot be liable as a supervisor for the alleged delay in sending Rivera's paperwork to the Defenders' Office because it was not Taylor's duty under state law to ensure that transmittal happened. Neither Rivera's complaint nor the district court cite any law or policy to the contrary. This Court need not go any further to reverse and render judgment dismissing the claim against Taylor.

## B. Rivera did not plead facts plausibly showing that Taylor is liable as a supervisor.

Even assuming that Rivera adequately alleged a Sixth Amendment claim, he nonetheless failed to plead facts plausibly showing that Taylor is liable as a supervisor.

Rivera's complaint describes Taylor as the Processing Center's "facility administrator," ROA.520, responsible for (1) "formulating, implementing, and executing policies, customs, and practices applicable to the Center," and for (2) "training and supervising [the] Center's staff," ROA.521. In short, Rivera alleges that Taylor was a supervisor, acting under the color of state law, and can be liable as such under § 1983 for persons under his authority whose conduct violated the Sixth Amendment.

"Section 1983," however, "does not create supervisory or *respondeat superior* liability." *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002). A supervisory official, like Taylor, is not liable for the acts of his subordinates unless (1) he affirmatively participated in an act that caused a constitutional deprivation, or (2) he implemented

15

an unconstitutional policy that resulted in injury to the plaintiff. *Porter v. Epps*, 659 F3d 440, 446 (5th Cir. 2011). "Liability for failure to promulgate policy and failure to train or supervise both require that the defendant have acted with deliberate indifference." *Id.*

Rivera does not plead any facts showing that Taylor personally failed to send his appointment paperwork, so Taylor can only be liable under a theory of supervisor liability. It is unclear what sort of supervisory-liability claim Rivera is asserting against Taylor—a failure-to-promulgate-policy claim, or a failure-to-supervise-and-train claim.[2] Regardless, neither type of supervisor liability is supported by factual allegations "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

### 1. Rivera did not plead facts plausibly showing that Taylor personally failed to send his paperwork to the appointment authority.

Rivera does not plead facts showing that Taylor personally failed to send his appointment paperwork. Besides the legal conclusion that "Taylor and Recana were responsible under state law for sending Rivera's . . . paperwork" to the appointment authority and they "did not fulfil this duty," the complaint does not allege facts showing that Taylor, himself, failed to send Rivera's paperwork to the appointment authority. ROA.550.

---

[2] At least one member of this Court has noted that it "is unclear" whether a failure to promulgate policy and failure to supervise and train "are meant to be different theories of supervisor liability or different articulations of the same theory." *McNeal v. LeBlanc*, 90 F.4th 425, 438 (5th Cir. 2024) (Duncan, J., concurring). Taylor therefore addresses both for completeness.

Moreover, when the plaintiff alleges that a supervisory official directly participated in the acts causing a constitutional deprivation, the plaintiff "must show the defendant's deliberate indifference to [the] *plaintiff's* constitutional rights," specifically. *Crittindon v. LeBlanc*, 37 F.4th 177, 188 (5th Cir. 2022) (emphasis added). For example, in *Crittindon*, this Court held that the defendants could "not be found to have acted with deliberate indifference" as to three plaintiffs, because the defendants were not aware of the risk that the three plaintiffs were being overdetained. *Id.* at 189. And once the defendants became aware that the specific plaintiffs were being overdetained, they promptly acted. *Id.*

Likewise, Taylor was not deliberately indifferent to Rivera's Sixth Amendment rights. There is no allegation that Taylor was personally aware of a delay in sending Rivera's appointment paperwork. In fact, Rivera's complaint shows the complete opposite. Taylor received an email from the Defenders' Office about Rivera's appointment paperwork in December 2021—when Taylor was no longer working as the facility administrator of the Processing Center. ROA.531; *see also* ROA.520 ("Taylor was the facility administrator of the Center from (approximately) July to November 2021."). Taylor then forwarded that message to a Recana employee acting as the chief jailer of the Processing Center, who handled the matter from there. ROA.531. Thus, Taylor "cannot be found to have acted with deliberate indifference" as to Rivera while he served as the facility administrator. *Crittindon*, 37 F.4th at 189.

### 2. Rivera did not plead facts plausibly showing that Taylor implemented an unconstitutional policy.

Rivera's allegations against Taylor boil down to a supervisor-liability claim. Supervisory liability exists under § 1983 "without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) (quoting *Grandstaff v. City of Borger*, 767 F.2d 161, 169, 170 (5th Cir. 1985)). But at a minimum, a plaintiff must "identify specific policies or to explain how they permitted" the alleged constitutional violation. *Oliver*, 276 F.3d at 742.

The failure to do so is fatal to a supervisory liability claim. Just last year, this Court dismissed a supervisor liability claim because the plaintiff's "broad and conclusory allegation that [the defendant] acted as a policy maker within TDCJ [wa]s insufficient to state a claim that he affirmatively participated in conduct causing a constitutional violation or that he implemented a policy that caused any violation." *Jones v. Lumpkin*, No. 23-40612, 2024 WL 1994279, at *1 (5th Cir. May 6, 2024) (per curiam).

The same sort of "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" plague Rivera's complaint here. *Iqbal*, 556 U.S. at 678. Rivera's *only* allegation regarding the Processing Center's policies is that Taylor "worked in partnership with Recana to develop the policies and customs that led to the denial" of Rivera's Sixth Amendment rights. ROA.551. He alleges no facts about *what* that policy was or *how* that policy was "so deficient that the policy 'itself [wa]s a repudiation'" of his

18

Sixth Amendment rights. *Thompkins*, 828 F.2d at 304 (quoting *Grandstaff*, 767 F.2d at 170). If Rivera's claim against Taylor is construed as a failure-to-promulgate policy claim, it should be dismissed. *See Oliver*, 276 F.3d at 742 (dismissing claim against supervisor because plaintiff's complaint failed "to identify specific policies or to explain how they permitted" the wrongful conduct).

### 3. Rivera did not plead facts plausibly showing that Taylor failed to supervise or train in a deliberately indifferent manner.

Besides Rivera's conclusory allegation that Taylor "was responsible for training and supervising [the] Center's staff," ROA.521, he has not alleged any specific facts demonstrating that Taylor failed to supervise or train staff in a deliberately indifferent manner—which is fatal to any purported failure-to-supervise-and-train claim under § 1983. That is because "[a] failure to supervise or train claim arises when the plaintiff shows that (1) the defendant failed to supervise or train the alleged bad actor, (2) there is a causal connection between the infringement of the plaintiff's constitutional rights and the lack of supervision or training, and (3) the failure to supervise or train exhibited deliberate indifference to the plaintiff's constitutional rights." *Parker v. Blackwell*, 23 F.4th 517, 525 (5th Cir. 2022). A plaintiff must also "'allege with specificity how a particular training program is defective.'" *Westfall v. Luna*, 903 F.3d 534, 552 (5th Cir. 2018) (per curiam) (quoting *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010)). The failure to do so requires dismissal.

Take *Parker v. Blackwell* for example. There, the plaintiff's "allegations [we]re generic at best, providing no specific facts that r[o]se above the speculative level." *Parker*, 23 F.4th at 525. The plaintiff "merely allege[d] that [the defendant's]

19

supervision was 'grossly inadequate,' that [defendant] 'breached [his] duty to provide [the other defendant] with adequate supervision,' and that such a failure was a 'producing and proximate cause [] of [the plaintiff's] injuries.'" *Id.* (fourth alteration in original) (quoting Plaintiff Parker's First Amended complaint at 6, *Parker v. Shelby County*, No. 9:18-cv-00225-MJT-CLS (E.D. Tex. Feb. 28, 2019)). With nothing more than a formulaic recitation of the elements, the dismissal of the plaintiff's failure-to-supervise-and-train claim was affirmed. *Id.*

If Rivera's claim against Taylor is construed as a failure-to-supervise-or-train claim, it should similarly be dismissed. Like the plaintiff in *Parker*, Rivera fails to "allege any facts regarding the lack of a training program," *id.*, much less "allege *with specificity* how a particular training program is defective," *Westfall*, 903 F.3d at 552 (emphasis added).

Rivera argued below that he plausibly pleaded deliberate indifference by alleging that the "Lubbock Private Defenders' Office repeatedly reached out to the Center to request a list of people detained under Operation Lone Star because of the problem of missing documentation," that "the problem of uncounseled people being detained past their Article 17.151 deadlines . . . was well publicized in both state and national media," and that Taylor has "extensive experience in jail administration duties." ROA.551. But none of these allegations pertain to a *particular omission* in a training program developed by Taylor or that Taylor had knowledge of such an omission, which this Court has warned is necessary to satisfy such a "stringent standard of fault." *Porter*, 659 F.3d at 446. Moreover, none of these facts show that Taylor's allegedly inadequate training or supervision was "obviously likely to result in a

20

constitutional violation," which is necessary to show deliberate indifference. *Brown*, 623 F.3d at 255. And for reasons explained below, *see infra* at 30-37, the law that Taylor allegedly violated is far from clearly established, so his conduct could not obviously result in a constitutional violation.

In sum, Rivera has not plausibly pleaded a Sixth Amendment claim against Taylor.

## II. Taylor is Entitled to Qualified Immunity.

The district court further erred by denying Taylor qualified immunity. Taylor is entitled to qualified immunity for three reasons. *First*, Taylor was acting within his discretionary authority as the facility administrator of the Processing Center. *Second*, Taylor did not violate Rivera's Sixth Amendment rights. *Third*, Rivera did not carry his burden to show that Taylor violated clearly-established law.

"Qualified immunity shields government officials from liability when they are acting within their discretionary authority and their conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known." *Gates v. Tex. Dep't of Protective & Regul. Servs.*, 537 F.3d 404, 418 (5th Cir. 2008) (citations omitted). To get into the qualified immunity framework, the government official must first establish "that the challenged conduct was within the scope of his discretionary authority." *Cherry Knoll, L.L.C. v. Jones*, 922 F.3d 309, 318 (5th Cir. 2019). The burden then shifts to the plaintiff to rebut the qualified immunity defense. *Id.*

"A plaintiff seeking to defeat qualified immunity must show that (1) the official violated a statutory or constitutional right and (2) the right was clearly established at

the time of the conduct." *Parker*, 23 F.4th at 522. The burden is on the plaintiff to make that showing. *Id.* Although the Court has discretion in determining which prong to address first, *Pearson v. Callahan*, 555 U.S. 223, 236 (2009), the Supreme Court has more recently cautioned that courts "'should think hard, and then think hard again,' before addressing both qualified immunity and the merits of an underlying constitutional claim,'" *District of Columbia v. Wesby*, 583 U.S. 48, 62 n.7 (2018) (quoting *Camreta v. Greene*, 563 U.S. 692, 707 (2011)).

### A. Taylor acted with discretionary authority as the facility administrator of the Processing Center.

Taylor was acting with discretionary authority when the alleged Sixth Amendment violation occurred. The district court disagreed, finding that Tayor did not show he was acting within his discretionary authority. ROA.1051. In its analysis, the court treated Taylor like a standard rank-and-file employee whose job is to transmit paperwork all day without any thought. But that is inconsistent with both Rivera's complaint and the district court's earlier analysis.

Before reaching the discretionary-authority issue in a later opinion, the district court first concluded that Rivera adequately pleaded a Sixth Amendment claim against Taylor under a supervisor-liability theory. The court explained that Taylor, as a "supervisory official," could be liable because of his role in the "implementation of policies and procedures governing the sending of paperwork necessary for appointment of counsel." ROA.856.

Under the district court's logic, then, the basis of Taylor's liability is that he developed and implemented policy that violated the Sixth Amendment, but when

developing and implementing that policy, he was not exercising discretion. Those two things cannot be reconciled. Developing and implementing policy is inherently discretionary.

"An official acts within his discretionary authority when he performs non-ministerial acts within the boundaries of his official capacity." *Cronen v. Tex. Dep't of Hum. Servs.*, 977 F.2d 934, 939 (5th Cir. 1992). To determine whether an official was acting with discretion, the Court looks to state law. *Sweetin v. City of Texas City*, 48 F.4th 387, 392 (5th Cir. 2022).

Under Texas law, non-ministerial (or discretionary) acts are those involving "personal deliberation, decision and judgment." *City of Lancaster v. Chambers*, 883 S.W.2d 650, 654 (Tex. 1994). Ministerial acts, in contrast, are those where "the law prescribes and defines the duties to be performed with *such precision* and *certainty* as to leave nothing to the exercise of discretion or judgment." *Id.* (quoting *Rains v. Simpson*, 50 Tex. 495, 501 (Tex. 1878)) (emphases added). The "so-called 'ministerial duty' exception to qualified immunity," on which the district court relied to deny Taylor qualified immunity, is thus "extremely narrow in scope." *Gagne v. City of Galveston*, 805 F.2d 558, 560 (5th Cir. 1986) (citing *Davis v. Scherer*, 468 U.S. 183, 196 n.14 (1984)). "[I]f an official is required to exercise his judgment, even if rarely or to a small degree, the [Supreme] Court would apparently not find the official's duty to be ministerial in nature." *Id.*

Taylor was required to exercise judgment as the "facility administrator" hired by the Texas Division of Emergency Management to "design, administer, and operate the Val Verde Processing Center." ROA.520. Taylor was tasked with

23

"stand[ing] up" the Center, ROA.551, which involved "formulating, implementing[,] and executing [its] policies, customs, and practices." ROA.521. Doing so necessarily required Taylor's "personal deliberation, decision and judgment," *Chambers*, 883 S.W.2d at 654. That is particularly so in the midst of a border crisis. *See* ROA.523-24.

Illegal immigration caused a "massive rush of people" to enter the border counties, creating a "bottleneck" based on "sheer numbers." ROA.536. Taylor's decisions about how to "design, administer, and operate the Val Verde Processing Center," and "formulat[e] . . . its policies," ROA.520, 521, required decisions about how to allocate resources and process the large number of arrests in Kinney County—including Rivera's. In this role Taylor was exercising discretion, thus entitling him to assert the defense of qualified immunity. *See Bevill v. Fletcher*, 26 F.4th 270, 275 (5th Cir. 2022) (concluding that a "sheriff, district attorney, and state judge" had discretionary authority to allocate resources, thus entitling them to assert a defense of qualified immunity).

Even if Rivera's legal conclusion is true—that it was Taylor's duty under Texas law to ensure the transmittal of his paperwork—delay in doing so does not prevent Taylor from asserting qualified immunity. It was improper for the district court to focus its analysis exclusively on the specific act of transmitting paperwork.

"[O]ne mandatory act is not determinative" of whether a defendant was acting within the scope of his discretion. *Koerselman v. Rhynard*, 875 S.W.2d 347, 351 (Tex. App.—Corpus Christi-Edinburg 1994, no writ). This Court's precedent reflects the same rule and explains that "even officials whose conduct 'violates some statutory

or administrative provision' do not necessarily lose their qualified immunity." *Beltran v. City of El Paso*, 367 F.3d 299, 308 (5th Cir. 2004) (quoting *Davis v. Scherer*, 468 U.S. 183, 194 (1984)); *see also Gagne*, 805 F.2d at 559-60 ("Although the Supreme Court's qualified-immunity opinions have given special attention to the need to avoid inhibiting the ardor of public officials whose positions entail the exercise of discretionary authority, the Court has never implied that the immunity defense is lost when an official is engaged in routine tasks."). When determining whether an official is entitled to immunity, courts "must consider, as a whole, all of the duties required of [the official]," *Koerselman*, 875 S.W.2d at 351, "not [] whether the offic[ial] has the discretion to do an allegedly wrongful act while discharging [his] function," *Chambers*, 883 S.W.2d at 653.

The district court's focus was too narrow. It focused only on whether Taylor had discretion to not transmit Rivera's paperwork, ROA.1047, rather than focus on whether Taylor was exercising discretion in "design[ing], administer[ing], and operat[ing]" the Processing Center. ROA.520. He unquestionably was.

A prison administrator, like Taylor, "must exercise an exceedingly broad range of discretion in performing his official duties." *Douthit v. Jones*, 619 F.2d 527, 534 (5th Cir. 1980). That is because "the higher the post, the broader the range of responsibilities and duties, and the wider the scope of discretion, it entails." *Scheuer v. Rhodes*, 416 U.S. 232, 247 (1974). And in his job as the facility administrator, Taylor's responsibility was to get the Processing Center up and off the ground. When Taylor first showed up, the Center had only a tent and some computer devices. ROA.527. It was incumbent on him to develop policies, allocate resources, and "put[] in all the

25

work-flow processes." ROA.527. Taylor was thus acting with discretionary author-ity. *See White v. Boyte*, 116 F.3d 1478 (5th Cir. 1997) (holding that when a county sheriff "had broad discretion in making decisions and formulating policies regarding safety and protection of inmates in his jail," his duties "[c]learly . . . were discretion-ary, not ministerial").

This case is distinguishable from the authority cited by the district court. The district court relied on *Cherry Knoll, LLC v. Jones*, 922 F.3d 309, 318 (5th Cir. 2019) for the proposition that it is the defendant's burden to show he was acting with dis-cretionary authority. ROA.1042-44. But unlike Rivera's complaint, the complaint in *Cherry Knoll* set forth specific allegations regarding the powers and duties of the de-fendant city manager in the city charter, the law regarding the authority of the city manager, and the city's codes regarding the relevant issues. *See Cherry Knoll*, 922 F.3d at 316. The district court also relied on *Diaz v. Cantu*, where this Court con-sulted the Texas Local Government Code to determine that a county judge acted outside of his discretionary authority to punish someone for contempt without any commissioners-court vote. 123 F.4th 736, 748-49 (5th Cir. 2024).

Here, in contrast, Rivera's complaint does not identify any law that "prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of [Taylor's] discretion or judgment[.]" *Chambers*, 883 S.W.2d 650 at 654. Rivera simply concluded that it was Taylor's duty to ensure the transmittal of appointment paperwork "under state law." ROA.550. But "[a] law that fails to specify the precise action that the official must take in each instance cre-ates only discretionary authority; and that authority remains discretionary however

26

egregiously it is abused." *Davis*, 468 U.S. at 196 n.14. Rivera cannot do an end run around this by manufacturing a ministerial duty for Taylor based on a legal conclusion.

The district court erred by holding that Taylor was acting without discretionary authority. That is inconsistent with the court's previous finding that Taylor was a "supervisory official" who could be liable for his role in the "implementation of policies and procedures governing the sending of paperwork necessary for appointment of counsel." ROA.856. Taylor had a "broad[] range of responsibilities and duties," *Scheuer*, 416 U.S. at 247, as the Processing Center's facility administrator, such as developing policies and work-flow processes, and thus a "wide[] . . . scope of discretion," *id.* That gets Taylor into the qualified immunity framework.

## B.   Taylor did not violate Rivera's Sixth Amendment right to counsel.

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The right attaches at a defendant's initial appearance before a magistrate. *Rothgery*, 554 U.S. at 194-95. Taylor does not dispute that Rivera's right attached at his Article 15.17 hearing.

Attachment, however, does not create an immediate, unconditional entitlement to appointed counsel. "[T]he term 'attachment' signifies nothing more than the beginning of the defendant's prosecution. It does not mark the beginning of a substantive entitlement to the assistance of counsel." *Id.* 213-14 (Alito, J., concurring). Rather, the right to counsel "exists to protect the accused during *trial-type* confrontations with the prosecutor." *United States v. Gouveia*, 467 U.S. 180, 190 (1984)

(emphasis added); *see also United States v. Ash*, 413 U.S. 300, 322 (1973) ("Pretrial proceedings are 'critical,' then, if the presence of counsel is essential 'to protect the fairness of the trial itself.'") (Stewart, J., concurring).

### 1.  The delay in appointing Rivera's counsel did not violate the Sixth Amendment.

Rivera alleges that he was not appointed counsel for "76 days after his initial appearance" before a magistrate, forty-six of which were "after the date on which Kinney County was required to release on him on a bond that he could afford." ROA.550 (citing Tex. Code Crim. Proc. art. 17.151 § 1(2)). But a delay in appointment of counsel does not, by itself, constitute a violation of the Sixth Amendment.

In *Rothgery*, the Supreme Court did not decide "whether [a] 6–month delay in appointment of counsel resulted in prejudice to the [criminal defendant's] Sixth Amendment rights . . . ." 554 U.S. at 213. The Court did hold, though, that counsel need only be "appointed within a reasonable time . . . to allow for adequate representation at any critical stage before trial, as well as at trial itself." *Id.* at 212. In other words, the Supreme Court signaled that the Sixth Amendment requires counsel's presence *only* at critical stages and that timely appointing counsel is *only* a prerequisite for ensuring that adequate counsel is present at critical stages.

This Court agreed in *Lucio v. Davis*, where it explained that because *Rothgery* involved a six-month delay without resolving whether it was unconstitutional, "jurists of reason could not debate the potential for fairminded disagreement as to whether [a] three-month delay violated [the] Sixth Amendment right to counsel." 751 Fed. App'x 484, 490 n.3 (5th Cir. 2018) (per curiam); *see also Leachman v.*

28

*Stephens*, 581 Fed. App'x 390, 400 (5th Cir. 2014) (noting that the Supreme Court has not "held that speedy-trial concerns determinatively bear on the denial-of-counsel inquiry, *or* that a defendant suffers an independent violation of the right to counsel because he requests appointment of counsel not given to him until his arrival to answer pending state charges."). Because the three-month delay in *Lucio* was not unreasonable by itself, the defendant's only path to a Sixth Amendment violation was through the denial of counsel at a critical stage of the proceeding. 751 Fed. App'x at 490 n.3.

So too here. Rivera alleges approximately a two-month delay—substantially shorter than the delays in *Rothgery* and *Lucio*. If those delays did not violate the Sixth Amendment, the delay in Rivera's case surely does not. Regardless, the issue is not so much the amount of delay, but whether Rivera was forced to participate in a critical stage of his criminal case without representation. He was not.

### 2. Rivera did not participate in a critical stage proceeding without counsel.

Not every event following the inception of adversary judicial proceedings constitutes a "critical stage." *Ash*, 413 U.S. at 321. Indeed, "[i]t is 'an analytical mistake' to 'assum[e] that attachment necessarily requires the occurrence or imminence of a critical stage.'" *Leachman*, 581 Fed. App'x at 399 (quoting *Rothgery*, 554 U.S. at 212). "The cases have defined critical stages as proceedings between an individual and agents of the State (whether 'formal or informal, in court or out') that amount to 'trial-like confrontations,' at which counsel would help the accused 'in coping with legal problems or . . . meeting his adversary." *Rothgery*, 554 U.S. at 212 n.16

(internal citations omitted). Pretrial proceedings are "critical," then, if the presence of counsel is essential "to protect the fairness of the trial itself." *Schneckloth v. Bustamonte*, 412 U.S. 218, 238-39 (1973).

Here, Rivera does not allege that he was compelled to participate in any critical-stage proceeding without counsel. He concedes that after his initial appearance before the magistrate, he never appeared before a judge again during his detention. ROA.529. He was not interrogated. He was not required to enter any plea. He was not asked to make any legal decision or to waive any rights. He simply remained in custody while the appointment process unfolded, and local officials worked through "a massive rush of people" causing a "bottleneck . . . with the sheer number[]" of arrests made during the border crisis. ROA.536.

The absence of any critical-stage proceeding is dispositive. Because Rivera was never denied counsel at a critical stage, his Sixth Amendment claim necessarily fails. The Sixth Amendment does not require that counsel be appointed immediately upon the attachment of the right or at any specific time before a critical stage occurs; it requires only that counsel be available to "the accused during trial-type confrontations with the prosecutor." *Gouveia*, 467 U.S. at 190. That never happened here.

## C.  Taylor did not violate clearly-established law.

Even if Taylor violated Rivera's Sixth Amendment rights, qualified immunity still applies because no clearly-established law in October 2021 would have placed Taylor on notice that his conduct was unconstitutional.

The question of whether a government official violated clearly-established law "is a doozy" to which the "§ 1983 plaintiff bears the burden of proof." *Morrow v.*

*Meachum*, 917 F.3d 870, 874 (5th Cir. 2019). A right is clearly established *only* when "existing precedent [has] placed the statutory or constitutional question beyond debate," *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011), so that "it is sufficiently clear that every reasonable official would have understood that what he is doing violates" the right at issue. *Parker*, 23 F.4th at 522. The "right in question must be specifically described, and the Supreme Court has, on numerous occasions, directed courts 'not to define the clearly established law at a high level of generality.'" *Parker*, 23 F.4th at 522 (quoting *Cunningham v. Castloo*, 983 F.3d 185, 191 (5th Cir. 2020)). This demanding standard "gives government officials breathing room to make reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *al-Kidd*, 563 U.S. at 743 (and quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

"One need not find a case squarely on point to show that a right was clearly established." *Parker*, 23 F.4th at 522. But the "precedent must show that the existence of the right is not debatable." *Id.* at 522. "[T]here must be adequate authority at a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitively unlawful." *Cunningham*, 883 F.3d at 191 (quoting *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015)). This can be achieved either through Supreme Court precedent or "a robust 'consensus of cases of persuasive authority.'" *al-Kidd*, 563 U.S. at 742 (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)). By either path, the relevant precedent must "squarely govern[]" the facts at hand. *Mullenix v. Luna*, 577 U.S. 7, 13 (2015) (per curiam) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 201 (2004) (per curiam)).

### 1. No clearly-established law imposes Sixth Amendment liability on facility administrators for failing to transmit paperwork.

The analysis of whether the law is clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled on other grounds by Pearson*, 555 U.S. 223. At the most specific level, Rivera did not identify any precedent—from the Supreme Court or any court of appeals—holding that a facility administrator like Taylor violates the Sixth Amendment by failing to ensure appointment paperwork is transmitted to the appointment authority—particularly when no state law is cited making it his duty to do so. That should end the analysis.

For example, in *Waganfeald v. Gusman*, two plaintiffs alleged that their Sixth Amendment right to counsel was violated when a prison official did not let them call their attorneys with their cellphones while land-line service was down. 674 F.3d 475, 483-84 (5th Cir. 2012). This Court declined to reach the merits of the Sixth Amendment claims and held that the official was entitled to qualified immunity because "there [was] no particularized, clearly established law which would have instructed [the official] that, under the Sixth Amendment, he had to allow pre-trial detainees to use their cell phones when land lines were disrupted." *Id.* at 485. The events of *Waganfeald* took place in the aftermath of Hurricane Katrina, and this Court cited the "prison officials' unprecedented logistical burden" and the "unprecedented emergency conditions" as further support for its holding. *Id.*

Similarly, there is an absence of particularized, clearly-established law that would have instructed Taylor—when dealing with an unprecedented border crisis

32

and "bottleneck" of arrestees, ROA.536—that he would violate the Sixth Amendment by failing to ensure that appointment paperwork is transmitted.

### 2. No clearly-established law holds that a two-month delay in appointing counsel violates the Sixth Amendment.

Even defining the relevant conduct more broadly, no clearly-established law holds that a two-month delay in appointment of counsel violates the Sixth Amendment.

In *Rothgery*, the Supreme Court expressly declined to answer what constitutes an unreasonable delay in the appointment of counsel and what standards should apply in making that determination. 554 U.S. at 213. The defendant there was arrested and had his Article 15.17 hearing in front of a magistrate, just like Rivera. *Id.* at 195-96. The defendant "had no money for a lawyer and made several oral and written requests for appointed counsel, which went unheeded." *Id.* at 196. He was eventually indicted by a Texas grand jury, resulting in his re-arrest and an order increasing his bail, which he could not post. *Id.* at 195-96. Six months after his Article 15.17 hearing, the defendant was assigned a lawyer, who promptly obtained a bail reduction and assembled the paperwork confirming the defendant had never been convicted of a felony. *Id.* at 197. "Counsel relayed this information to the district attorney, who then filed a motion to dismiss the indictment, which was granted." *Id.*

The defendant then brought a Sixth Amendment claim under § 1983 claiming that if Gillespie County had provided a lawyer within a reasonable time after his Article 15.17 hearing, he would not have been indicted, re-arrested, or jailed for three weeks. *Id.* The Supreme Court refused to go so far, only holding that Texas's Article

33

15.17 hearing "marks the start of the adversary judicial proceedings that trigger attachment of the Sixth Amendment right to counsel." *Id.* at 213. And the Court was careful to state it "d[id] not decide whether the 6-month delay in appointment of counsel resulted in prejudice to [the defendant's] Sixth Amendment rights" or "what standards should apply in deciding this." *Id.*

So in a case involving a sixth-month delay in the appointment of counsel, the Supreme Court refused to decide whether the Sixth Amendment was violated and what standards apply. Because *Rothgery* involved a six-month delay without resolving whether it was unconstitutional, this Court has concluded that it was not clearly established that a three-month delay was unreasonable. *Lucio*, 751 Fed. App'x at 490 n.3.

If the law was not clearly established as to those longer delays, it was not clearly established as to this shorter, two-month delay in appointing Rivera counsel.

**3. No clearly-established law holds that the absence of a bail hearing, as opposed to the conducting of a bail hearing without counsel, violates the Sixth Amendment.**

When determining whether Rivera pleaded a viable Sixth Amendment claim, the district court concluded that under Texas Code of Criminal Procedure Article 17.151 § 1(2), Rivera should have been released on affordable bail thirty days after his arrest. ROA.847. If counsel had been appointed for Rivera within thirty days of his arrest, the district court reasoned, then counsel would have ensured that Rivera was provided a bail hearing, and Rivera's release would have been secured earlier. ROA.847-49. The fault is Taylor's as the Processing Center's facility administrator, the court

34

further explained, because he failed to ensure Rivera's paperwork made it to the Defenders' Office in a timely manner.

There are two problems with this. First, the district court relied on another district court opinion to reach its conclusion. While a district court opinion can be persuasive, it is not enough to make the law clearly established. Second, Rivera does not allege that he was denied counsel at a bail hearing. He alleges that no bail hearing occurred. The question is therefore whether the absence of a bail hearing—as opposed to the conducting of a bail hearing without counsel—violates the Sixth Amendment right to counsel. No case clearly establishes that it does.

The district court's conclusion—that a hearing to obtain reduced bail is a critical stage—is based on the opinion of another district court. ROA.844 (citing *Booth v. Galveston County*, 352 F. Supp.3d 718 (S.D. Tex. 2019) (adopting recommendation of Magistrate Judge)). Regardless of whether that conclusion is right or wrong, one district court opinion—in a different factual context—is not "adequate authority at a sufficiently high level of specificity," *Cunningham*, 883 F.3d at 191, to inform Taylor that the failure to ensure Rivera's paperwork reached the appointing authority would cause Rivera to not receive a bail hearing, and that the bail hearing would be a "critical stage" under the Sixth Amendment. Further, *Booth* involved a Sixth Amendment claim brought by an indigent arrestee against Galveston County, six district court judges, three county magistrates, and a district attorney—officials that actually have a duty under Texas law to ensure the appointment of counsel, unlike Taylor, *see supra* at 12-14. *Booth*, 352 F. Supp.3d at 724.

To the extent Rivera argues that his Sixth Amendment rights were violated because he should have had a bail hearing thirty days after his arrest, and the absence of appointed counsel contributed to the bail hearing not occurring, this argument fails because no clearly-established law supports it.

Rivera's real complaint—that no bail hearing occurred—is inappropriately aimed at Taylor as right-to-counsel claim under the Sixth Amendment. "The scope of any constitutional right to a bail hearing—as opposed to a preliminary probable cause hearing—is unclear[.]" *Jauch v. Choctaw County*, 886 F.3d 534, 541 n.3 (5th Cir. 2018) (Southwick, J., dissenting from denial from rehearing en banc). "Courts have split over the applicable *due process* theory reasoning. But there is an antecedent question of whether such detention should be evaluated under the Sixth Amendment *speedy trial right*, a specific constitutional provision, rather than the amorphous standard of Fourteenth Amendment due process." *Id.* (emphases added). Rivera did not bring a claim against Taylor under either theory that *might* apply when a defendant does not receive a bail hearing.

In sum, Rivera bore the burden of demonstrating that the law was clearly established at the time of the alleged violation. He did not do so. Neither Rivera nor the district court identified any clearly-established law:

- holding facility administrators liable under the Sixth Amendment for failing to transmit appointment paperwork—particularly when no law or policy is cited making it their duty to do so;
- holding that a two-month delay in appointment of counsel violates the Sixth Amendment absent participation in critical stage proceedings;

36

- holding that the absence of a bail hearing violates the Sixth Amendment right to counsel or that such hearings are critical stages; or

- addressing delays in appointing counsel under circumstances remotely similar to those present here.

Qualified immunity protects officials unless the unlawfulness of their conduct was apparent from existing case law. *See, e.g.*, *Taylor v. Barkes*, 575 U.S. 822, 826 (per curiam) (reversing denial of qualified immunity where no decision of the Supreme Court or robust consensus of authority established the right asserted). Because Rivera cannot provide clearly-established law at any level of generality, much less the specific level required, Taylor is entitled to qualified immunity.

### 4. The alleged delay in transmitting Rivera's appointment paperwork was not objectively unreasonable.

Even assuming Taylor had a duty under Texas law to ensure Rivera's appointment paperwork reached the Defenders' Office—and that a delay in doing so could support a Sixth Amendment claim—qualified immunity would still apply because Taylor's conduct was not objectively unreasonable under the circumstances.

Qualified immunity protects officials whose conduct is reasonable even if it ultimately proves to have been mistaken. *See Malley*, 475 U.S. at 341 (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"). Thus, another way to frame the qualified immunity analysis is whether Taylor's conduct was objectively unreasonable. *See Mason v. Faul*, 929 F.3d 762, 764 (5th Cir. 2019) (per curiam) ("Qualified immunity is justified unless *no* reasonable officer could have acted as [the officer] did here, or *every* reasonable officer faced with the

37

same facts would *not* have shot at [the plaintiff].”). The Court “consider[s] an official’s’ conduct to be objectively reasonable unless all reasonable officials in the defendant’s circumstances would have then known that the conduct violated the Constitution.” *Gates*, 537 F.3d at 419.

The sheer volume of Operation Lone Star arrests created conditions under which perfect administrative compliance was impossible. Between August 2021 and July 2022, Kinney County, which had a jail capable of holding twenty-seven people, prosecuted more than 3,500 migrants for trespassing—ballooning the County’s number of prosecutions from “ten misdemeanor prosecutions a month” to “500 to 600 cases a month.” ROA.528. Rivera’s own complaint admits that “Kinney County ha[d] nowhere near the resources required to arrest, prosecute, and jail this many people on its own.” ROA.528.

Recognizing the unprecedented circumstances, the Texas Supreme Court issued emergency orders modifying the normal appointment procedures. ROA.472-79. And Governor Abbott issued an executive order suspending various provisions of the Texas Code of Criminal Procedure, including Article 17.151’s requirement that a defendant be automatically released on personal bond when the State is not ready for trial. ROA.481-84.

Amidst all this, Taylor was hired to “help stand up” the Processing Center, ROA.551, and formulate and implement its “policies, customs, and practices,” ROA.521. Given the “massive rush of people” creating a “bottleneck . . . with the sheer numbers,” ROA.536, it cannot be said that “*no* reasonable offic[ial] would have acted as [Taylor] did here, or *every* reasonable offic[ial] faced with the same

38

facts would" have ensured the transmittal of Rivera's paperwork sooner. *Mason*, 929 F.3d at 764. With so many arrestees being processed, it was reasonable for there to be a delay in the transmittal of Rivera's paperwork to the appointment authority. *See Waganfeald*, 674 F.3d at 485-86 (holding an official acted reasonably when considering "unprecedented logistical burden[s]" and "unprecedented emergency conditions" present).

## Conclusion

The Court should reverse the judgment of the district court and render judgment dismissing the claim against Taylor.

Respectfully submitted.

Ken Paxton
Attorney General of Texas

William R. Peterson
Solicitor General

Brent Webster
First Assistant Attorney General

/s/ Garrett C. Gray
Garrett C. Gray
Assistant Attorney General
Garrett.Gray@oag.texas.gov

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Counsel for Defendant-Appellant

## CERTIFICATE OF SERVICE

On December 10, 2025, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ Garrett C. Gray
GARRETT C. GRAY

## CERTIFICATE OF COMPLIANCE

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 10,069 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ Garrett C. Gray
GARRETT C. GRAY