Case No. 25-50714

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔠𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰
# 𝔣𝔬𝔯 𝔱𝔥𝔢 𝔉𝔦𝔣𝔱𝔥 𝔠𝔦𝔯𝔠𝔲𝔦𝔱

MOCTEZUMA RIVERA CASTELAN, ON BEHALF OF HIMSELF AND
OTHERS SIMILARLY SITUATED

*Plaintiff-Appellee*

v.

RONNY TAYLOR

*Defendant-Appellant*

On Appeal from the United States District Court for the
Western District of Texas, No. 5:23-cv-01394

## PLAINTIFF-APPELLEE MOCTEZUMA RIVERA CASTELAN'S
## RESPONSE BRIEF

David A. Donatti
Carolina Rivera Nelson
Savannah Kumar
AMERICAN CIVIL LIBERTIES
UNION OF TEXAS
P.O. Box 8306
Houston, TX 77288

Dong Hyun Lee
Covington & Burling LLP
850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-6000

Celin Carlo-Gonzalez
Covington & Burling LLP
30 Hudson Yards
New York, NY 10001
(212) 841-1000

Darren Teshima
Angela Gasca
Covington & Burling LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105
(415) 591-6000

Stanley Young
Robert Haslam
Dominic Booth
Covington & Burling LLP
3000 El Camino Real
Palo Alto, CA 94306
(650) 632-4704

*Counsel for Plaintiff-Appellee*
*Moctezuma Rivera Castelan*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1.     Defendant-Appellant: Ronny Taylor, in his individual capacity as an employee of the Texas Division of Emergency Management.

2.     Counsel for Defendant-Appellant: Ken Paxton, William R. Peterson, Brent Webster, and Garrett C. Gray of the Office of the Attorney General of the State of Texas.

3.     Defendant: Gary Villareal

4.     Counsel for Defendant: Sostenes Mireles, II of Sostenes Mireles II, PLLC.

5.     Defendant: Kinney County.

6.     Counsel for Defendant: Kelly R. Albin of Denton Navarro Rocha Bernal & Zech, PC.

7.     Defendant: Recana Solutions, LLC.

i

8.    Counsel for Defendant: Douglas C. Bracken of Kane Russell Coleman Logan PC.

9.    Plaintiff-Appellee: Moctezuma Rivera Castelan.

10.    Counsel for Plaintiff-Appellee: David Donatti, Carolina Rivera Nelson, and Savannah Kumar of ACLU of Texas; Stanley Young, Robert Haslam, Darren Teshima, Celin Carlo-Gonzalez, Miranda Rutherford, Ainsley McMahon, Jess Gonzalez Valenzuela, and Dong Hyun Lee of Covington & Burling LLP.

*/s/ Celin Carlo-Gonzalez*
Celin Carlo-Gonzalez

*Counsel for Plaintiff-Appellee*
*Moctezuma Rivera Castelan*

# STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Fifth Circuit Rule 28.2.3 and Federal Rule of Appellate Procedure 34(a)(1), Plaintiff-Appellee Moctezuma Rivera Castelan requests oral argument. Defendant-Appellant Ronny Taylor collaterally appeals the denial of his motion to dismiss asserting qualified immunity defenses, and oral argument could assist the Court in reviewing the district court's orders resolving that motion.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ..........................................i

STATEMENT REGARDING ORAL ARGUMENT ............................. iii

TABLE OF AUTHORITIES..................................................................vii

STATEMENT OF THE ISSUES...........................................................1

INTRODUCTION.................................................................................1

STATEMENT OF THE CASE ..............................................................4

I.   Taylor led the Val Verde Processing Center and was responsible for transmitting appointment paperwork for arrested persons. ...............................................................................4

II.  Taylor failed to ensure that appointment paperwork was transmitted within twenty-four hours, as he was required to do by Article 15.17(a). .......................................................................6

III. Taylor's policies and practices deprived Rivera Castelan of his right to counsel for 76 days, during 46 of which he was detained in violation of state law and due process.........................8

IV.  Taylor knew that his failure to ensure paperwork was being timely transmitted was causing widespread harm. ......................10

V.   Rivera Castelan filed suit, and the district court correctly denied Taylor's motion to dismiss................................................12

SUMMARY OF THE ARGUMENT .....................................................14

ARGUMENT .....................................................................................16

I.   Taylor fails to meet his burden of showing that the qualified immunity framework applies........................................................16

     A.   The duty to transmit appointment paperwork under state law is ministerial. .......................................................18

B.    Taylor was delegated the ministerial duty to transmit appointment paperwork under state law. ...........................19

    1.    The duty to transmit appointment paperwork under state law was delegated to Taylor.....................20

    2.    Taylor fails to show that the duty to transmit appointment paperwork was not delegated to him................................................................................22

    3.    The scope of Taylor's duty to transmit appointment paperwork is a question of fact that cannot be resolved on a motion to dismiss. ..................25

C.    Taylor breached his ministerial duty to transmit appointment paperwork under state law and so acted outside the scope of his discretion. .......................................27

    1.    Taylor's characterization of the applicable standard is backwards and should be rejected............29

    2.    Even under Taylor's incorrect standard, his arguments fail. ............................................................31

II.    Even if the qualified immunity framework applies, Taylor is not entitled to qualified immunity................................................34

A.    Taylor violated Rivera Castelan's right to counsel under the Sixth Amendment. .............................................35

    1.    The date Rivera Castelan became entitled to reduced bond under Article 17.151 was a "critical stage" of his proceedings. .............................................36

    2.    Taylor is liable for causing Rivera Castelan to be deprived of his Sixth Amendment rights. ...................50

B.    Rivera Castelan's Sixth Amendment right to counsel was clearly established. .......................................................57

      1.    Taylor had fair notice that his conduct was causing constitutional harm. ........................................58

      2.    Taylor's counterarguments that he has not violated a "clearly established" right fail. ...................61

CONCLUSION .................................................................................65

CERTIFICATE OF COMPLIANCE.......................................................67

CERTIFICATE OF SERVICE..............................................................68

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Argersinger v. Hamlin,*
407 U.S. 25 (1972)..................................................................62

*Baker v. Story,*
621 S.W.2d 639 (Tex. Civ. App. 1981) ..................................33

*Betschart v. Oregon,*
103 F.4th 607 (9th Cir. 2024) ...............................................43

*Bevill v. Fletcher,*
26 F.4th 270 (5th Cir. 2022) ..................................................31

*Booth v. Galveston Cnty.,*
2019 WL 3714455 (S.D. Tex. Aug. 7, 2019)..................... 38, 39, 42

*Booth v. Galveston County,*
352 F. Supp. 3d 718 (S.D. Tex. 2019) ...................................42

*Brooks v. George Cnty., Miss.,*
84 F.3d 157 (5th Cir. 1996).......................................... *passim*

*Caliste v. Cantrell,*
329 F. Supp. 3d 296 (E.D. La. 2018)......................................44

*Ex Parte Cardenas,*
631 S.W.3d 758 (Tex. Ct. App. 2021).......................... 10, 38, 49, 60

*Ex Parte Castellano,*
321 S.W.3d 760 (Tex. Crim. App. 2010) ......................... 9, 10, 47

*Cherry Knoll, LLC v. Jones,*
922 F.3d 309 (5th Cir. 2019)..........................................30, 33

*Cole v. Carson,*
935 F.3d 444 (5th Cir. 2019)..................................................57

*Coleman v. Alabama*,
  399 U.S. 1 (1970).................................................................. 39, 40, 43

*Collier v. Suhre*,
  605 S.W.3d 699 (Tex. App. 2020)...................................................... 32

*Crittindon v. LeBlanc*,
  37 F.4th 177 (5th Cir. 2022) ..................................................... *passim*

*Estate of Cummings v. Davenport*,
  906 F.3d 934 (11th Cir. 2018) (Pryor, J.) .......................................... 30

*Diaz v. Cantu*,
  123 F.4th 736 (5th Cir. 2024) .................................................... *passim*

*Ditch v. Grace*,
  479 F.3d 249 (3d Cir. 2007) ........................................................ 43

*Douthit v. Jones*,
  641 F.2d 345 (5th Cir. 1981)........................................................ 51

*Ex Parte Gill*,
  413 S.W.3d 425 (Tex. Crim. App. 2013) ........................................... 9, 43

*Higazy v. Templeton*,
  505 F.3d 161 (2d Cir. 2007) ..................................................... 39, 43

*Highland Cap. Mgmt., L.P. v. Bank of Am., Nat'l Ass'n*,
  698 F.3d 202 (5th Cir. 2012)........................................................ 27

*Hill v. City of Houston*,
  2000 WL 1672663 (5th Cir. Oct. 11, 2000) ......................................... 31

*Jauch v. Choctaw County*,
  2016 WL 5720649 (N.D. Miss. Sep. 30, 2016) ................................... 58, 59

*Jauch v. Choctaw County*,
  874 F.3d 425 (5th Cir. 2017)......................................... 41, 58, 59, 64

*Jones v. Cain*,
  600 F.3d 527 (5th Cir. 2010)........................................................ 24

*Jones v. Lumpkin*,
   2024 WL 1994279 (5th Cir. May 6, 2024) ......................................... 53

*Jones v. State*,
   803 S.W.2d 712 (Tex. Crim. App. 1991) ............................................ 43

*Krug v. Lincoln Nat'l Life Ins. Co.*,
   245 F.2d 848 (5th Cir. 1957) .............................................................. 20

*Luckey v. Harris*,
   860 F.2d 1012 (11th Cir. 1988) .......................................................... 43

*McAfee v. Thaler*,
   630 F.3d 383 (5th Cir. 2011) ..................................................... *passim*

*McGee v. Carrillo*,
   297 F. App'x 319 (5th Cir. 2008) ................................................. 25, 26

*McNeal v. LeBlanc*,
   90 F.4th 425 (5th Cir. 2024) .............................................................. 56

*Ottemann v. Knights of Columbus*,
   36 F.4th 600 (5th Cir. 2022) .............................................................. 25

*Parker v. Blackwell*,
   23 F.4th 517 (5th Cir. 2022) ......................................................... 53, 54

*Parker v. LeBlanc*,
   73 F.4th 400 (5th Cir. 2023) ................................................. 51, 54, 56

*Rothgery v. Gillespie County*,
   554 U.S. 191 (2008) ............................................................................ 35

*Salazar v. Collins*,
   255 S.W.3d 191 (Tex. App. 2008) ...................................................... 32

*Shreveport Engraving Co., Inc. v. United States*,
   143 F.2d 222 (5th Cir. 1944) .............................................................. 24

*Sims v. Adams*,
   537 F.2d 829 (5th Cir. 1976) ......................................................... 51, 52

*Smith v. Lockhart,*
   923 F.2d 1314 (8th Cir. 1991)......................................................... 39, 43

*Stack v. Boyle,*
   342 U.S. 1 (1951)............................................................................. 41, 47

*Sw. Bell Tel., L.P. v. Emmett,*
   459 S.W.3d 578 (Tex. 2015) ............................................. 17, 18, 19, 32

*Sweetin v. City of Texas City, Texas,*
   48 F.4th 387 (5th Cir. 2022) ................................................ 3, 16, 18, 33

*Torres v. Collins,*
   2023 WL 6166523 (E.D. Tenn. Sept. 21, 2023) (Corker, J.)............... 42

*United States v. Dohm,*
   618 F.2d 1169 (5th Cir. 1980)............................................................. 42

*United States v. Pleitez,*
   876 F.3d 150 (5th Cir. 2017)....................................................... *passim*

*United States v. Portillo,*
   969 F.3d 144 (5th Cir. 2020)............................................................... 40

*United States v. Robel,*
   389 U.S. 258 (1967)............................................................................. 62

*Waganfeald v. Gusman,*
   674 F.3d 475 (5th Cir. 2012)............................................................... 62

*Westfall v. Luna,*
   903 F.3d 534 (5th Cir. 2018)............................................................... 53

*White v. Boyte,*
   1997 WL 304389 (5th Cir. May 22, 1997) .......................................... 33

**Statutes**

42 U.S.C. § 1983 ................................................................. 25, 29, 31, 50

Tex. Code Crim. Proc. Art. 11. ..................................................... 39, 47

Tex. Code Crim. Proc. Art. 15.17(a) ................................................ *passim*

Tex. Code Crim. Proc. Art. 17.151 ................................................ *passim*

Tex. Code Crim. Proc. Art. 26.04 ..................................................... 5, 18

Tex. Code Crim. Proc. Art. 26.047 ................................................ 5, 6, 21

## STATEMENT OF THE ISSUES

1.    Has Taylor met his burden of showing that failing to transmit appointment-of-counsel paperwork is within the scope of his discretionary authority, as required to "even get into" the qualified immunity framework?

2.    Is Taylor entitled to qualified immunity where he deprived Rivera Castelan of counsel at a critical stage of proceedings in violation of clearly established law?

## INTRODUCTION

Defendant-Appellant Ronny Taylor deprived Plaintiff-Appellee Moctezuma Rivera Castelan of his right to counsel under the Sixth Amendment by failing to transmit appointment-of-counsel paperwork as required by Texas law. Despite having two bites at the apple in the district court, Taylor continues to ignore clear authority confirming that he is not entitled to qualified immunity at this stage of the proceedings. The district court's two well-reasoned opinions correctly held that Taylor's factual disagreements with Rivera Castelan's well-pleaded allegations would be better addressed through a summary judgment motion. Taylor's appeal should be denied.

Rivera Castelan was arrested in Kinney County, Texas, for misdemeanor trespass. He was magistrated at the Val Verde Processing Center operated by Taylor and was found to be entitled to the appointment of counsel. Under state law, the paperwork necessary for him to be appointed counsel should then have been transmitted by Taylor to the Lubbock Private Defenders' Office "not later than 24 hours after" Rivera Castelan's magistration. Tex. Code Crim. Proc. Art. 15.17(a). But Taylor did not send Rivera Castelan's paperwork to the

1

Lubbock Private Defenders' Office for 75 days. Without the assistance of counsel, Rivera Castelan remained in jail for another 252 days, after which he was released without ever being charged with a crime.

The district court correctly held that qualified immunity shields only *discretionary* acts, and Taylor had no discretion to not transmit Rivera Castelan's paperwork to the Lubbock Private Defenders' Office within 24 hours of Rivera Castelan's magistration. Taylor does not dispute that state law imposes this duty or that the duty is nondiscretionary. Nor does he contest that *nobody* transmitted Rivera Castelan's appointment paperwork within 24 hours, in clear violation of state law.

Instead, Taylor argues that the duty to transmit Rivera Castelan's paperwork was not his. But Rivera Castelan alleges that Taylor assumed this duty under a managed assigned counsel program, allegations that Taylor does not rebut. As the district court correctly found, this is because the scope of Taylor's responsibilities under the managed assigned counsel program is a factual, not a legal, question. Because there is no evidence in the record from which this Court could determine the scope of Taylor's responsibilities, and because it is

2

*Taylor's* burden to show that he acted with discretionary authority, Taylor cannot "even get into" the qualified immunity framework at this stage. *Sweetin v. City of Texas City, Texas*, 48 F.4th 387, 392 (5th Cir. 2022).

Taylor's failure to transmit appointment paperwork violated Rivera Castelan's constitutional rights. Under state law, Rivera Castelan was unambiguously entitled to release after 30 days of his arrest. Tex. Code Crim. Proc. Art. 17.151 § 1(2). By failing to transmit Rivera Castelan's appointment paperwork, Taylor prevented him from being appointed counsel for 76 days and denied Rivera Castelan the assistance of counsel that would have allowed him to petition for his release. In short, Taylor deprived Rivera Castelan of counsel at a critical stage of his proceedings, and he is not entitled to qualified immunity.

Taylor's appeal should be denied.

## STATEMENT OF THE CASE

**I.    Taylor led the Val Verde Processing Center and was responsible for transmitting appointment paperwork for arrested persons.**

Under Operation Lone Star, which Texas launched in March 2021, state law enforcement and military began using state trespass law in collaboration with participating counties to arrest en masse individuals suspected of illegally crossing the Texas-Mexico border. ROA.524–25, ¶¶ 23, 28–29. To facilitate the increase in arrests, Texas created the Val Verde Processing Center to process persons arrested under Operation Lone Star. ROA.525–26, ¶¶ 27, 29. The state hired Appellant Ronny Taylor to operate the center with Recana Solutions, LLC, a private contractor. ROA.520–21, ¶ 10. As the jail administrator, Taylor was responsible for formulating and implementing policies and practices applicable to the center. ROA.521, ¶ 10.

From July 2021 to February 2022, every person arrested under Operation Lone Star was transported to and magistrated by videoconference at the Val Verde Processing Center. ROA.525–26, ¶¶ 29, 31. At their magistration, individuals could request the appointment of counsel. ROA.529, ¶ 42; *see* Tex. Code Crim. Proc. Art. 15.17(a). If the magistrate determined they were entitled to counsel,

4

they were provided forms to sign that needed to be transmitted to the Lubbock Private Defenders' Office, who would subsequently appoint an attorney. *See* Tex. Code Crim. Proc. Art. 26.04(o); ROA.527, ¶ 34. This paperwork needed to be transmitted within 24 hours. Tex. Code Crim. Proc. Art. 15.17(a) (appointment paperwork must be transmitted "not later than 24 hours" after a request for counsel is made).

As alleged in the complaint, the statutory duty to transmit appointment paperwork within 24 hours was delegated to Taylor under a managed assigned counsel program.[1] ROA.521, 527, 530–31, 535 ¶¶ 10, 33–34, 45, 50, 69–70; *see* Tex. Code Crim. Proc. Art. 26.047. Managed assigned counsel programs generally hold sheriffs and local jailers, rather than the magistrate, responsible for processing and disseminating appointment paperwork. ROA.527, ¶ 33. Here, Taylor filled that role. Taylor acknowledged this when speaking to the press: "When I first showed up [at the Val Verde Processing Center], we had a tent, and the computer devices, so we started working and putting in all

---

[1] In a managed assigned counsel program, a designated entity, instead of a magistrate, appoints counsel. Tex. Code Crim. Proc. Art. 26.047(a).

the work-flow processes, developing the forms, doing pretty much everything that goes with running a jail." ROA.527, ¶ 34.

How duties are allocated under a given managed assigned counsel is not specified by statute, but rather by the statutorily required "written agreement" implementing the program. *See* Tex. Code Crim. Proc. Art. 26.047(a) (defining a managed assigned counsel program as a "program operated with public funds . . . by a governmental entity, nonprofit corporation, or bar association *under a written agreement* with a governmental entity" (emphasis added)). But the "written agreement" underlying the managed assigned counsel program here, as well as any other contracts or documents that could explain the scope of Taylor's duties,[2] are not before the Court. ROA.1050.

## II.   Taylor failed to ensure that appointment paperwork was transmitted within twenty-four hours, as he was required to do by Article 15.17(a).

From July 2021 to February 2022, the Val Verde Processing Center repeatedly failed to transmit appointment of counsel paperwork in a timely manner. ROA.535, ¶ 69. As a result, the Lubbock Private

---

[2] Managed assigned counsel programs also are allowed to "enter into contracts necessary to perform the program's duties," which could be relevant. Tex. Code Crim. Proc. Art. 26.047(i).

Defenders' Office "frequently contacted the Val Verde Processing Center" during this period "to request lists of individuals it processed because [the center] did not reliably transfer their paperwork as required for the Office to appoint counsel." ROA.531, ¶ 50. Without this paperwork, the Lubbock Private Defenders' Office "was unable to even determine who needed appointed counsel." ROA.531, ¶ 50.

Nevertheless, after Taylor's "repeated failure to send necessary [appointment] paperwork," the Lubbock Private Defenders' Office realized it would need to perform its own investigation to determine which detainees qualified for appointed counsel. ROA.531, ¶ 51. In September 2021, the Lubbock Private Defenders' Office discovered that paperwork had not been provided for 80 individuals and subsequently contacted the Val Verde Processing Center. ROA.535, ¶ 70. And again on December 16, 2021, after investigating, the Lubbock Private Defenders' Office discovered that Taylor and the Val Verde Processing Center had not timely transmitted appointment paperwork for 51 individuals, including Rivera Castelan. ROA.531, ¶ 51.

**III. Taylor's policies and practices deprived Rivera Castelan of his right to counsel for 76 days, during 46 of which he was detained in violation of state law and due process.**

On October 6, 2021, Rivera Castelan was arrested in Kinney County on suspicion of "Criminal Trespass in a Disaster Area," a Class A misdemeanor that carries up to one year of incarceration. ROA.529, ¶ 41. Shortly after his arrest, Rivera Castelan was brought to the Val Verde Processing Center, where he appeared before a magistrate via video conference. ROA.529, ¶ 42. The magistrate determined he was indigent and entitled to the appointment of counsel. ROA.529, ¶ 42.

But, as was the case for many others, Taylor failed to send the appointment paperwork necessary for Rivera Castelan to actually be appointed counsel within 24 hours, as required by state law; Rivera Castelan's paperwork was delayed for 75 days. ROA.532, ¶ 54. Only after the Lubbock Private Defenders' Office investigated and contacted Taylor on December 16, 2021 to ask for Rivera Castelan's paperwork did Taylor forward that request to the new head of the Val Verde Processing Center, Brandon Kirkpatrick, who sent Rivera Castelan's appointment paperwork on December 20, 2021. ROA.531–32, ¶¶ 51–53. Rivera Castelan was appointed counsel the next day. ROA.532, ¶ 54.

Rivera Castelan was detained for the entire 76-day period without charges ever being filed against him. ROA.530, ¶ 46. This plainly violated Texas Code of Criminal Procedure Article 17.151, which states that any person "detained in jail pending trial of an accusation against him *must be released* either *on personal bond or by reducing the amount of bail required*, if the state is not ready for trial" within a certain period of time depending on the crime they are accused of committing— for Rivera Castelan, within 30 days. Tex. Code Crim. Proc. Art. 17.151 § 1(2); ROA.529, ¶ 41. It is beyond question that, under Texas law, the state cannot be "ready for trial" if it has not filed charges and "there is no indictment." *Ex Parte Castellano*, 321 S.W.3d 760, 762–63 (Tex. Crim. App. 2010) (collecting cases). If the state has not filed charges within the statutory deadline, Article 17.151 "unequivocally declares that a defendant detained pending trial 'must be released.'" *Ex Parte Gill*, 413 S.W.3d 425, 430 (Tex. Crim. App. 2013).

Once Rivera Castelan's 30-day Article 17.151 deadline passed without charges being filed, Rivera Castelan became immediately

entitled to release on a bond he could afford.[3] *Castellano*, 321 S.W.3d at 762. Taylor's failure to perform his mandatory duty to timely transmit Rivera Castelan's counsel appointment paperwork deprived Rivera Castelan of the assistance of counsel necessary to seek his release. Given the clarity of Texas law, even an attorney of bare-minimum competence could have secured Rivera Castelan's release from detention. ROA.532, ¶ 55.

## IV. Taylor knew that his failure to ensure paperwork was being timely transmitted was causing widespread harm.

Not only did Taylor's conduct harm Rivera Castelan, but it also harmed hundreds of other individuals arrested in Kinney County—and Taylor knew it. As explained above, Taylor and the Val Verde Processing Center under his supervision frequently failed to send appointment paperwork for individuals after they were magistrated. ROA.531, ¶ 50. The Lubbock Private Defenders' Office regularly

---

[3] While an executive order issued after Operation Lone Star began suspended the portion of Article 17.151 requiring an individual's "automatic release," that order did not suspend the requirement under Article 17.151 that an individual be released by "reducing the amount of bail" required. Appellant's Br. at 5; *see Ex Parte Cardenas*, 631 S.W.3d 758, 761 (Tex. Ct. App. 2021) (explaining that EO-13 "suspends Article 17.151 only to the extent that it calls for releasing defendants on personal bond. *It does not suspend Article 17.151's release of defendants on bonds they can afford.*").

contacted Taylor and the Val Verde Processing Center to request this paperwork, and, as explained above, Taylor knew as early as September 2021 (before Rivera Castelan had been arrested) that at least 80 individuals' paperwork had not been timely transmitted and had therefore been deprived of counsel. ROA.535, ¶ 70.

Taylor also knew that many of the other detainees for whom he failed to transmit paperwork were, like Rivera Castelan, being held in violation of Article 17.151. While hundreds of individuals were being arrested each month, the legal system that Taylor and others were purporting to stand up failed to ensure that they were being provided counsel as required by the Sixth amendment and were not being held in violation of clear state law. ROA.528, 536–37 ¶¶ 37, 71–72, 75; *see also* ROA.851–52.

This abuse was widely publicized. In September 2021, local and national media reported that only about 10% of the hundreds of individuals arrested under OLS had been charged with a crime. ROA.537, ¶ 71. Kinney County's only prosecutor, Brent Smith, publicly acknowledged that there were many individuals who had been detained for months without charges due to the county's severe lack of

11

prosecutorial capacity. ROA.537, ¶ 75. Kinney County Judge Tully Shahan also conceded that individuals were not regularly being appointed counsel, stating, "[w]e have to catch up." ROA.537, ¶ 74. As Smith aptly put it, the situation was a "mess." ROA.537, ¶ 75.

## V.   Rivera Castelan filed suit, and the district court correctly denied Taylor's motion to dismiss.

Rivera Castelan filed suit on November 4, 2023, asserting a Sixth Amendment claim against Taylor and Recana for failing to timely transmit his appointment paperwork, thereby depriving him of counsel and keeping him in jail for 46 days past the time when state law mandated his release.[4]

Taylor, Recana, and Kinney County filed motions to dismiss, which the district court denied. ROA.629, 826. In denying Taylor's motion, the court had "no difficulty in finding that [Rivera Castelan] has stated a violation of the Sixth Amendment," explaining that

---

[4] Rivera Castelan also asserted a Fourteenth Amendment claim against Kinney County for violating his due process rights by detaining him for 222 days past the date he should have been released under Article 17.151, and a malpractice claim against the first attorney appointed to him, who was wholly ineffective in representing Rivera Castelan and ultimately was removed for deficient performance. ROA.546, ¶¶ 113–114; ROA.532–33 ¶¶ 54–60. These claims are stayed during the pendency of this appeal.

Taylor's failure to transmit Rivera Castelan's appointment of counsel paperwork caused him to be impermissibly denied counsel for 76 days. ROA.843. The court further found that this delay caused Rivera Castelan prejudice and to lose "the opportunity to obtain a bail reduction and thus an earlier release from detention." ROA.849.

Before reaching the issue of qualified immunity, the district court noted that the doctrine applies only where a defendant shows that they acted within the scope of their discretionary authority, and Taylor had not attempted to make such a showing. ROA.863. Consequently, the district court gave Taylor an opportunity to file a renewed motion to dismiss to try to meet this burden. ROA.867, 1051. In his renewed motion, Taylor conceded that the duty to transmit appointment paperwork under Article 15.17(a) is "at least in part a ministerial duty," and he explained that "had Taylor involved himself in the appointment process[,] he may very well have trod down the same extralegal path as" others who have been found to have acted outside the scope of their discretion and thus not be entitled to qualified immunity. ROA.874. In other words, Taylor contends that the duty to transmit appointment paperwork under Article 15.17(a) had not been delegated to *him*.

13

The district court denied Taylor's renewed motion. ROA.1051. Noting that Taylor did not dispute that the duty to transmit appointment paperwork under Article 15.17(a) is ministerial, the court found that Taylor failed to overcome the allegation in the complaint that this duty had been delegated to him. *See* ROA.1047–48. The court stated that Taylor's dispute is factual and discovery would be needed to reach a final determination on that question. ROA.1047–49. The court further explained that, "[w]hile it may ultimately come to light that Taylor indeed had no such delegated duty, resolving this matter on a Rule 12(b)(6) motion on the information now before the Court exceeds the permissible bounds of such a motion." ROA.1048.

Taylor subsequently appealed. ROA.1052.

## SUMMARY OF THE ARGUMENT

1.    Taylor fails to meet his burden of showing that the qualified immunity framework applies. Qualified immunity applies only to government officials acting within the scope of their discretionary authority. As Taylor acknowledges, the duty to transmit appointment of counsel paperwork under Texas law is a ministerial and non-discretionary duty. Rivera Castelan plausibly alleges this duty was

14

delegated to Taylor through the managed assigned counsel program implemented under Operation Lone Star, and, as the district court correctly found, the scope of Taylor's duties and authority is a factual issue that cannot be resolved at the motion to dismiss stage. Because Taylor bears the burden of showing that he acted with discretionary authority and he cannot do so, his appeal should be denied.

2. Even if the qualified immunity framework applies, Taylor is not entitled to qualified immunity because he violated Rivera Castelan's clearly established right to counsel. By failing to ensure that Rivera Castelan's appointment paperwork would be transmitted in a timely manner, Taylor deprived Rivera Castelan of the assistance of counsel that could have assisted him in securing mandatory pretrial release under Article 17.151. Rivera Castelan sufficiently pleads Taylor is liable for violating his Sixth Amendment rights and that he had fair warning his conduct would violate Rivera Castelan's right to have counsel at a critical stage of his proceedings. Taylor thus is not entitled to qualified immunity.

## ARGUMENT

### I.    Taylor fails to meet his burden of showing that the qualified immunity framework applies.

The Court can dispose of Taylor's appeal on the sole basis that he fails to meet his burden of showing that the qualified immunity framework applies. "To even get into the qualified-immunity framework, [a] government official must satisfy his burden of establishing that the challenged conduct was within the scope of his discretionary authority." *Sweetin v. City of Texas City, Texas*, 48 F.4th 387, 392 (5th Cir. 2022). In determining the scope of an officer's duties, courts "look to state law." *Id.* If a defendant fails to meet their burden, the analysis ends. *Diaz v. Cantu*, 123 F.4th 736, 750 (5th Cir. 2024) (because the Court's "jurisdiction on interlocutory appeal is sharply limited," if it concludes that "there is no qualified immunity, [it must] go no further").

As Taylor acknowledged in the district court, officers who fail to comply with a ministerial or "non-discretionary duty" imposed by state law act outside their discretionary authority and are not entitled to qualified immunity. *Brooks v. George Cnty., Miss.*, 84 F.3d 157, 165 (5th Cir. 1996); ROA.873 (stating the district court was "obviously correct

16

that 'ministerial duties' do not invoke the qualified immunity defense"). A duty is ministerial "where the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment." *Sw. Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 587, 589 (Tex. 2015). For example, this Court has held that a "duty to keep records of work performed by pretrial detainees and to transmit those records to" a specified entity is ministerial. *Brooks*, 84 F.3d at 165.

Taylor fails to meet his burden of showing that he acted with discretionary authority in failing to ensure that Rivera Castelan's appointment of counsel paperwork was transmitted to the Lubbock Private Defenders' Office. As even Taylor does not dispute, the duty to transmit appointment paperwork under Article 15.17(a) is ministerial. While he maintains that this duty was not his, that claim is contradicted both by the well-pleaded allegations in the complaint and this Court's precedent. Taylor had no discretion to decline to transmit Rivera Castelan's paperwork or to implement policies that failed to ensure it was transmitted. Taylor thus fails to "even get into" the

17

qualified immunity framework, and his appeal should be denied.
*Sweetin*, 48 F.4th at 392.

### A.    The duty to transmit appointment paperwork under state law is ministerial.

The duty to transmit appointment paperwork within 24 hours of a request for counsel under Article 15.17(a) is clear, mandatory, and "leave[s] nothing to the exercise of discretion or judgment." *Emmett*, 459 S.W.3d at 587. Taylor conceded this in his brief before the district court, ROA.874, and he does not dispute it now.

Article 15.17(a) states that a person must be brought before a magistrate within 48 hours of arrest. Tex. Code. Crim. Proc. Art. 15.17(a). At that appearance, the presiding magistrate must inform them of their right to request counsel and "ensure that reasonable assistance in completing the necessary forms for requesting appointment of counsel is provided . . . at the same time." *Id.*; *see* Tex. Code Crim. Proc. Art. 26.04(o). If the magistrate finds counsel must be appointed but is not authorized to do so, they "shall without any unnecessary delay, but not later than 24 hours after the person arrested requests appointment of counsel, transmit, or cause to be transmitted

18

. . . to the [designated appointing authority], the forms requesting the appointment of counsel." Tex. Code. Crim. Proc. Art. 15.17(a).

This duty is indisputably ministerial. Indeed, this Court has previously held that a near identical duty to "keep records of work performed by pretrial detainees and to *transmit* those records to [another entity] so that pretrial detainees [could] be paid" was a "non-discretionary duty." *Brooks*, 84 F.3d at 165. Article 15.17(a)'s "use of the word 'shall' evinces the mandatory nature of the duty imposed," and the statute provides no indication that there is any "form of review, deliberation, or judgment" required in ensuring that appointment paperwork is transmitted to the appointing authority within 24 hours of a request for counsel being made. *Emmett*, 459 S.W.3d at 588.

### B.    Taylor was delegated the ministerial duty to transmit appointment paperwork under state law.

Texas law is unambiguous that appointment paperwork must be transmitted to the appointing authority "not later than 24 hours after" an arrested person "requests appointment of counsel." Tex. Code Crim. Proc. Art. 15.17(a). While the statute on its face assigns this duty to the presiding "magistrate," Rivera Castelan plausibly pleads that this duty was delegated to Taylor under a managed assigned counsel program.

Because the scope of Taylor's duties under the managed assigned counsel is governed by contracts and documents not before this Court (and not available to Rivera Castelan absent discovery), whether Taylor acted within the scope of his discretion ultimately is a question of fact that cannot be resolved on a motion to dismiss.

### 1. The duty to transmit appointment paperwork under state law was delegated to Taylor.

Rivera Castelan plausibly alleges that the duty to transmit his appointment of counsel paperwork was delegated to Taylor through the managed assigned counsel program in place under Operation Lone Star. As this Court has long recognized, the "duties of a public office" are often "so manifold and voluminous that they could not be actually and personally performed by the person holding the office and charged with the performance of its duties." *Krug v. Lincoln Nat'l Life Ins. Co.*, 245 F.2d 848, 853 (5th Cir. 1957). Consequently, "[i]t is more or less elementary that while an administrative body cannot delegate quasi-judicial functions, it can delegate the performance of administrative and ministerial duties and" in fact must do so where the duties cannot "be performed in person." *Id.*

20

Such is the case here. While the duty to transmit appointment paperwork under Article 15.17(a) is, at least initially, imposed on the magistrate, it was delegated to Taylor, the operator of the Val Verde Processing Center. As explained above, Texas law provides for, and Operation Lone Star used, a managed assigned counsel program. ROA.527, ¶ 33; Appellant's Br. at 5. A managed assigned counsel program is governed by the statutorily required "written agreement" that explains the duties and responsibilities of those who implement it. Tex. Code Crim. Proc. Art. 26.047(a)(2)(A).

As Rivera Castelan plainly alleges, the managed assigned counsel program specified that Taylor, as the Val Verde Processing Center's operator, had the duty to "handl[e] magistration logistics" and "send[] appointment of counsel paperwork" to the Lubbock Private Defenders' Office. ROA.527, ¶ 34. This is consistent with how managed assigned counsel programs in Texas generally work. ROA.527, ¶¶ 33–34. It is further confirmed by Taylor's and the Lubbock Private Defenders' Office's conduct. The latter "frequently contacted" the Val Verde Processing Center and Taylor specifically to request appointment paperwork that had not been timely transmitted. ROA.531, ¶ 50. For

21

example, when the office realized it was missing dozens of individuals' appointment paperwork, they reached out specifically to *Taylor* to inquire where it was. ROA.531, ¶ 51. Taylor, knowing what to do, forwarded that request to the new head of the processing center, who then provided all the missing paperwork just a few days later. ROA.531–32, ¶¶ 52–53. Based on these allegations, it is more than plausible to infer that Taylor had assumed the mandatory duty to transmit appointment paperwork under Article 15.17(a).

> **2.    Taylor fails to show that the duty to transmit appointment paperwork was not delegated to him.**

Rivera Castelan has plausibly pleaded that Taylor was delegated the duty to transmit appointment paperwork, and Taylor's arguments to the contrary misunderstand the applicable standard. Appellant's Br. at 13–15. The only issue before the Court is whether, based on the allegations pleaded in the complaint, Taylor can meet his burden of showing that his alleged conduct fell within the scope of his discretionary authority. Whether these allegations are sufficient to state a constitutional claim under Rule 12(b)(6) is an entirely separate question, and one that can only be addressed if Taylor meets his

threshold burden of showing that the qualified immunity framework applies. *See Diaz*, 123 F.4th at 749–50 (because the defendant failed to make this showing, the Court lacked jurisdiction to reach the question of whether the plaintiff stated a claim under Rule 12(b)(6)).

The complaint alleges that Taylor failed to transmit Rivera Castelan's appointment paperwork within 24 hours, as is required by state law. ROA.550, ¶¶ 129–30. It also alleges facts that, when assumed true, plausibly establish that Taylor had a duty under state law to transmit Rivera Castelan's appointment paperwork within 24 hours. *See* Section I.B.1, *supra.* The burden thus falls to Taylor to show that he had discretionary authority not to transmit that paperwork. Instead of trying to meet this burden, Taylor attempts to offload it by invoking the rubric of Rule 12(b)(6); specifically, he contends that Rivera Castelan's Sixth Amendment claim should be dismissed because it is premised on Taylor having breached his Article 15.17(a) duty to transmit Rivera Castelan's appointment paperwork. Appellant's Br. at 13. But this argument is incorrect and, in any event, makes no sense.[5]

---

[5] As explained above, Rivera Castelan does adequately allege that Taylor breached his Article 15.17(a) duty under state law. *See* Section I.B.1, *supra*. In addition, the idea that Rivera Castelan's claims should (continued…)

The district court expressly invited Taylor to support his assertion that the duty to transmit paperwork under Article 15.17(a) was not delegated to him. ROA.863; ROA.1050. Taylor has not even tried to do so and thus has waived the argument.[6] ROA.863; ROA.1050. At best, he asserts that there is no statute specifically stating that the duty was his. Appellant's Br. at 13–14. But he ignores the well-established authority confirming that statutory duties can be delegated and that such delegation can be accomplished both through "formal writings or informal words." *Shreveport Engraving Co., Inc. v. United States*, 143 F.2d 222, 226 (5th Cir. 1944); ROA.1047–48 ("Article 26.04(f-1) permits [managed assigned counsel] programs to appoint counsel 'in accordance with the guidelines established for the program'"). The complaint alleges that the managed assigned counsel program here delegated the ministerial duty to transmit appointment paperwork to Taylor, *see*

---

be dismissed because Rivera Castelan has not pleaded Taylor's duties under state law misunderstands Rivera Castelan's claim; whether Rivera Castelan can state a constitutional claim under the Sixth Amendment does not depend on Taylor having violated state law, and thus any purported failure to allege Taylor's duties under state law cannot justify dismissal under Rule 12(b)(6).

[6] Taylor was well aware when taking this appeal that the burden to show he acted with discretionary authority falls on him. To the extent he tries to raise this issue in reply, the Court should deem this argument waived. *See Jones v. Cain,* 600 F.3d 527, 541 (5th Cir. 2010) ("Arguments raised for the first time in a reply brief are generally waived.").

24

ROA.527, 550, ¶¶ 33–34, 129, and Taylor offers nothing to rebut that allegation.

### 3. The scope of Taylor's duty to transmit appointment paperwork is a question of fact that cannot be resolved on a motion to dismiss.

Because the statutorily required "written agreement" has not been produced yet, the full scope of Taylor's duties under this agreement (or agreements) is "a question of fact which cannot be resolved as a matter of law on a motion to dismiss." *Ottemann v. Knights of Columbus*, 36 F.4th 600, 608–09 (5th Cir. 2022). The main inquiry at this stage is whether Taylor can meet his burden of showing that he acted with discretionary authority when engaging in the conduct alleged in the complaint. *Diaz*, 123 F.4th at 749–50. Taylor cannot, so his appeal should be denied.

This Court's decision in *McGee v. Carrillo*, 297 F. App'x 319 (5th Cir. 2008), is instructive. There, a plaintiff sued a Texas sheriff under 42 U.S.C. § 1983 for detaining him in jail for over 30 days after the charges against him were dropped and he was entitled to release. *Id.* at 320. The district court denied the sheriff's motion to dismiss on qualified immunity grounds because he "failed to adduce any facts

25

demonstrating that he had the lawful authority to hold" the plaintiff and meet his burden of showing that he acted within his discretionary authority. *Id.* Although the sheriff claimed he acted lawfully pursuant to an "Interlocal Agreement" authorized by state law, this Court affirmed the denial of his motion to dismiss, explaining that "[t]he record as it currently stands lacks the Interlocal Agreement . . . the original capias ordering [the plaintiff] into custody, and any other relevant documentation that could guide a court" regarding whether the sheriff was acting "in a matter committed to his discretion." *Id.* at 321.

That is exactly the situation here. The duty to transmit appointment paperwork under Article 15.17(a) was delegated to Taylor via the statutorily required "written agreement" underlying the managed assigned counsel program here. But that agreement is not currently before the Court. Nor is there any evidence in the record that would allow the Court to decide, as a matter of law, the scope of Taylor's duties under the managed assigned counsel program. As this Court in *McGee* aptly put it: "To ask for more is not to commit this case to trial. But it is to say that the case needs to move to the summary judgment stage, with its associated discovery, before the district court will be able

26

to assess . . . the terms of the" agreements setting forth Taylor's duties. *Id.* at 322; *see also Crittindon v. LeBlanc*, 37 F.4th 177, 183 n.6 (5th Cir. 2022) (citing testimony by correctional official as to which of two jails had responsibility to transmit certain inmate paperwork); *Highland Cap. Mgmt., L.P. v. Bank of Am., Nat'l Ass'n*, 698 F.3d 202, 209 (5th Cir. 2012) (finding it improper to rule on interpretation of ambiguous contract where reference to "extrinsic evidence" is necessary). This is exactly what the district court held. ROA.1050–51 ("[Taylor] cannot complain that [Rivera Castelan] relies on mere allegations when [Taylor] presented the qualified immunity issue through a motion to dismiss.").

### C. Taylor breached his ministerial duty to transmit appointment paperwork under state law and so acted outside the scope of his discretion.

Once Rivera Castelan requested counsel at his magistration, it was Taylor's duty to "transmit" or "cause to be transmitted" Rivera Castelan's appointment paperwork within "24 hours." Tex. Code Crim. Proc. Art. 15.17(a). As explained above, and as Taylor does not dispute, he wholly failed to comply with this ministerial duty by not transmitting Rivera Castelan's appointment paperwork for 75 days.

27

ROA.550, ¶¶ 129–30. Taylor thus is not entitled to qualified immunity. *See Brooks*, 84 F.3d. at 165 (Texas sheriff's failure to comply with "non-discretionary duty to keep records of work performed by pretrial detainees and to *transmit* those records to" another entity rendered him "not entitled to qualified immunity" (emphasis added)).

Taylor attacks the applicable standard, claiming that the district court improperly treated him "like a standard rank-and-file employee." Appellant's Br. at 22. But simply occupying a position of authority does not mean Taylor acted within the scope of his discretion. *See, e.g.*, *Diaz*, 123 F.4th at 749–50 (county judge acted outside the scope of his discretionary authority and was not entitled to qualified immunity). To the extent he implies that transmitting appointment of counsel paperwork was not his responsibility, he may raise this argument at summary judgment. There is no record from which this Court can dismiss Plaintiff's allegation that his role did, in fact, encompass transferring appointment-of-counsel paperwork. Because Taylor falls far short of meeting his burden of showing that he acted within the scope of his discretionary authority, his appeal should be denied.

**1.    Taylor's characterization of the applicable standard is backwards and should be rejected.**

Taylor premises his arguments on the claim that the district court failed to conduct the correct analysis under the discretionary-authority test. Taylor contends that, because the district court found that Rivera Castelan had adequately pleaded a Sixth Amendment claim against him under a supervisory liability theory, the court should have analyzed whether he acted with discretionary authority in a similar sequence. Appellant's Br. at 22–23, 27. In other words, Taylor asserts that the court should have looked *first* to whether Rivera Castelan has stated a claim under Section 1983 and *then* narrowed its focus to whether the conduct challenged by that claim (*i.e.*, Taylor's failure to implement policies) was discretionary or ministerial.

This is incorrect. As this Court recently confirmed, this Court's jurisdiction over an interlocutory qualified immunity appeal "is sharply limited" and lapses as soon as the Court determines "that there is no qualified immunity." *Diaz*, 123 F.4th at 750. If the Court determines that Taylor acted outside the scope of his discretion and that the qualified immunity does not apply, it lacks jurisdiction to proceed to the question of whether Rivera Castelan "stated a valid constitutional

29

claim" under Rule 12(b)(6). *Id.* (explaining this is "an issue *within* the qualified immunity framework"); *see Estate of Cummings v. Davenport*, 906 F.3d 934, 944 (11th Cir. 2018) (Pryor, J.) ("[T]o consider whether the amended complaint states a claim would be an inappropriate adventure into 'the merits of the action,' which are 'completely separate' from" the issue of whether the defendant established that he acted with discretionary authority).

Moreover, the analysis does not change regardless of whether the defendant is a rank-and-file employee or a high-level supervisor. *Brooks*, 84 F.3d at 165; *see also Diaz*, 123 F.4th at 749 (the test requires simply "that the discretionary authority . . . be held to exist"). If the Court agrees that the duty to transmit appointment paperwork under Article 15.17(a) was delegated to Taylor, and that it was ministerial, it need only determine whether Taylor complied with that duty by transmitting the paperwork or "caus[ing] [it] to be transmitted." Art. 15.17(a). Because Taylor did not, he is not entitled to qualified immunity. *See, e.g.*, *Cherry Knoll, LLC v. Jones*, 922 F.3d 309, 317, 319 (5th Cir. 2019) (city manager not entitled to qualified immunity for participating in conspiracy involving "[c]ity authorities at the highest

30

level" because his alleged conduct—the "filing of the subdivision

plats"— was not "within the scope of his discretionary authority");

*Brooks*, 84 F.3d at 165 (sheriff not entitled to qualified immunity where

he violated "non-discretionary duty" to transmit records, even though

Section 1983 claim was based on sheriff's failure to supervise

department and implementation of a "policy of not keeping [the

required] records").[7]

### 2. Even under Taylor's incorrect standard, his arguments fail.

Even assuming Taylor is correct that the Court should consider

whether he acted with discretion by looking to his duties as a

supervisory official, he still loses. A duty to execute a defined task

within a specific period is ministerial, even if the responsible party has

discretion over how to achieve execute that objective. *See, e.g.*, *Hill v.*

*City of Houston*, 2000 WL 1672663, at *10 (5th Cir. Oct. 11, 2000)

---

[7] This outcome is consistent with *Bevill v. Fletcher*, 26 F.4th 270 (5th Cir. 2022), which held that a sheriff, district attorney, and county judge who "threatened to withhold resources" in retaliation against the plaintiff's protected speech acted within the scope of their discretionary authority. *Id.* at 275. The Court reached that outcome because, if the plaintiff was right that the defendants had no discretion in allocating resources, then the defendants could not possibly have retaliated against the plaintiff, since retaliation requires discretion. *Id.* That is far different than what Taylor asks the Court to do here, which is to first address whether Rivera Castelan has stated a viable claim and then ask whether the conduct alleged under that claim was discretionary.

("While the mechanics may have had discretion to repair the pump within the two days or as soon as practicable after the problem is reported, their duty to repair was ministerial in the sense that they had to do it within a certain amount of time"). Thus, while Taylor may have had discretion in implementing policies to accomplish that task, he did not have discretion to implement policies that wholly failed to do so.

This conclusion is consistent with and endorsed by state law. *See, e.g.*, *Collier v. Suhre*, 605 S.W.3d 699, 705 (Tex. App. 2020) (Executive Director of the Texas Department of Criminal Justice lacked discretion to not comply with statutory duty directing him to provide prisoners with day rooms); *Salazar v. Collins*, 255 S.W.3d 191, 204 (Tex. App. 2008) (Executive Director of the Texas Department of Criminal Justice breached ministerial duties by failing to consistently ensure that inmates were searched as required by internal policies); *see also Emmett*, 459 S.W.3d at 588 (public utility commissioners breached ministerial duty by exercising authority to demolish bridge but then failing to pay relocation costs to affected entities as required by statute).

32

Beyond citing an inapplicable decision that contradicts Texas law,[8] Taylor points to nothing to refute this conclusion. All he can muster is an assertion that the implementation of policies generally involves the use of discretion and that, as a "facility administrator," Taylor necessarily had to use his "personal deliberation, decision, and judgment" to allocate resources in operating the Val Verde Processing Center. Appellant's Br. at 24. But this Court's precedent confirms that even an officer who *generally* possesses considerable discretionary authority is not entitled to qualified immunity for actions they take outside the scope of that authority. *See, e.g.*, *Diaz*, 123 F.4th at 742 (county judge lacked discretion to enter contempt order); *Sweetin*, 48 F.4th at 392 (permit officer lacked discretion to stop and detain individual); *Cherry Knoll*, 922 F.3d at 319 (city manager lacked

---

[8] Taylor cites *White v. Boyte*, 1997 WL 304389, (5th Cir. May 22, 1997) as standing for the proposition that a county sheriff's duties are discretionary and not ministerial. Appellant's Br. at 26. But *White* was interpreting Mississippi law, which, with respect to this issue, is different from and indeed flatly contradicts the law of Texas. *Compare White*, 1997 WL 304389, at *3 (under Mississippi law, a "sheriff's duty to 'safely keep in the jail of his county all persons committed by order of [the] courts' was discretionary in nature"), *with Baker v. Story*, 621 S.W.2d 639, 645 (Tex. Civ. App. 1981) (under Texas law, "[j]ailers and sheriffs act ministerially in receiving and caring for prisoners").

discretion to file subdivision plats). And Rivera Castelan does not challenge Taylor's exercise of discretion generally; he challenges Taylor's failure to transmit Rivera Castelan's appointment paperwork specifically.

## II.    Even if the qualified immunity framework applies, Taylor is not entitled to qualified immunity.

Taylor's appeal fails on the merits because, even if the qualified immunity framework applies, he is not entitled to immunity based on the well-pleaded allegations in the complaint. To determine whether a party is entitled to qualified immunity, this Court looks to whether: (1) "the officer's alleged conduct has violated a federal right"; and (2) "whether the right in question was clearly established at the time of the alleged violation, such that the officer was on notice of the unlawfulness of his or her conduct." *Crittindon*, 37 F.4th at 185–86.

Rivera Castelan plausibly and adequately pleads that Taylor is liable for violating his Sixth Amendment right to counsel. Because Rivera Castelan's right to counsel was clearly established, Taylor is not entitled to qualified immunity.

34

### A. Taylor violated Rivera Castelan's right to counsel under the Sixth Amendment.

Both this Court and the Supreme Court have "long recognized that the right to counsel is among the most fundamental rights of our criminal justice system." *McAfee v. Thaler*, 630 F.3d 383, 390–91 (5th Cir. 2011). Indeed, "[o]f all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive, for it affects his ability to assert any other right he may have." *Id.* at 391 (citation modified). And "[it] is well-settled that a defendant's right to counsel attaches 'at or after the time adversary judicial proceedings have been initiated against him.'" *Id.* "[O]nce the right attaches, it continues to apply at every critical stage of the proceedings." *Id.*

Rivera Castelan's Sixth Amendment right to counsel attached at his Article 15.17 magistration. *Rothgery v. Gillespie County*, 554 U.S. 191, 197–98 (2008). Thus, after his magistration, Rivera Castelan was entitled to be appointed counsel "within a reasonable time . . . to allow for adequate representation at any critical stage before trial, as well as at trial itself." *Id.* at 212; *see also id.* at 218 (Alito, J., concurring) (counsel must be appointed "as far in advance of trial, and as far in

35

advance of any pretrial 'critical stage,' as necessary to guarantee effective assistance at trial").

Taylor violated Rivera Castelan's constitutional rights by causing him to be deprived of counsel at a critical stage of his proceedings: the date when he became entitled to release or a reduced bond under Article 17.151. By failing to transmit or ensure that Rivera Castelan's appointment paperwork was transmitted in a timely manner, Taylor caused Rivera Castelan to not be appointed counsel for 76 days, thus preventing him from seeking his release through a reduced bond. Taylor's arguments to the contrary fail.

1. **The date Rivera Castelan became entitled to reduced bond under Article 17.151 was a "critical stage" of his proceedings.**

Taylor wholly neglects to address the key issue underlying Rivera Castelan's claim: whether the Article 17.151 deadline was a "critical stage" of his proceedings. This Court's precedent, as well as authority from the Supreme Court and other circuits, confirms that it is. A stage of proceedings is considered critical "where circumstances indicate that counsel's presence is necessary to ensure a fair process." *United States v. Pleitez*, 876 F.3d 150, 158 (5th Cir. 2017). In other words, a critical

36

stage "is one where 'the accused require[s] aid in coping with legal problems or assistance in meeting his adversary,' and the 'substantial rights of the accused may be affected.'" *McAfee*, 630 F.3d at 391.

A critical stage can occur even without a formal in-court hearing or adversarial proceeding. For example, this Court has held that "the post-trial, pre-appeal time period for making a motion for new trial is a critical stage." *Id*. Likewise, this Court found that a district court's issuance of an order imposing a "mandatory restitution award" was a critical stage, even where the court held no hearing or gave the defendant no opportunity to contest it. *Pleitez*, 876 F.3d at 159. The principle of these cases is that a particular stage of proceedings should be considered critical where it allows for "an opportunity to be heard" on an issue that may affect a defendant's important rights. *Id*.

The date Rivera Castelan became entitled to a reduced bond under Article 17.151 was a critical stage of his proceedings for three reasons. First, Rivera Castelan "required aid in coping with legal problems" attendant to securing his release under Article 17.151. *McAfee*, 630 F.3d at 391. Second, Rivera Castelan's ability to seek release under Article 17.151 affected his "substantial rights." *Id*. Third,

37

Taylor fails to rebut the authority, both in this Circuit and elsewhere, confirming that the Article 17.151 deadline is a critical stage of the proceedings under the Sixth Amendment.

>    **a)    Rivera Castelan's required legal aid to assert his right to release under Article 17.151.**

As soon as Rivera Castelan's Article 17.151 deadline passed and he became entitled to release through a reduced bond, he "required aid in coping with legal problems" necessary to vindicate his right to release. *McAfee*, 630 F.3d at 391. To secure his right to release under Article 17.151, Rivera Castelan needed to know his rights and how to assert them, which could have included filing a petition and presenting evidence. *See, e.g.*, *Cardenas*, 631 S.W.3d at 762 (granting petition for habeas corpus after reviewing evidence presented at hearing regarding amount of bond petitioner could afford under Article 17.151)).

It is a "no-brainer" that Rivera Castelan needed counsel to help navigate the "complex legal problems" and procedural morass necessary to obtain release under Article 17.151. *Booth v. Galveston Cnty.*, 2019 WL 3714455, at *11 (S.D. Tex. Aug. 7, 2019), *report and recommendation adopted*, 2019 WL 4305457 (S.D. Tex. Sept. 11, 2019);

38

*see generally* Tex. Code Crim. Proc. Art. 11.01–65 (governing habeas corpus proceedings). Especially for unrepresented defendants like Rivera Castelan, the presence of counsel "would unquestionably provide invaluable guidance to a criminal defendant facing a bail determination," either through a formal bail hearing, a habeas corpus petition, or even informal negotiations with the prosecution. *Booth*, 2019 WL 3714455, at \*11.

The Supreme Court recognized as much in *Coleman v. Alabama*, 399 U.S. 1, 9 (1970), where it held that a preliminary hearing where bail was available was a "critical stage" of proceedings. It explained that counsel can be "influential at the preliminary hearing in making effective arguments for the accused on such matters as the necessity for an early psychiatric examination or bail." *Id.* Courts across the country have since recognized that motions seeking bail are "important matters in which the assistance of counsel [can be] of critical importance." *Smith v. Lockhart*, 923 F.2d 1314, 1319 (8th Cir. 1991); *see, e.g., Higazy v. Templeton*, 505 F.3d 161, 172–73 (2d Cir. 2007) ("[B]ail hearings fit comfortably within the sphere of adversarial proceedings closely related

to trial" and constitute a "critical stage" for Sixth Amendment purposes).

Rivera Castelan's experience bears out the importance of having counsel at the Article 17.151 deadline. Rivera Castelan was unlawfully detained for 222 days, more than 6 months after he became entitled to a reduced bond under Article 17.151. ROA.546, ¶¶ 113–14. Yet within 5 days of being appointed competent counsel, he was released, and his case was dismissed.[9] ROA.533, ¶¶ 60–61. Just like a defendant who needs the assistance of counsel in "filing objections to a [pre-sentence report] addendum," an individual petitioning for release or a reduced bond under Article 17.151 like Rivera Castelan "require[s] aid in coping with legal problems." *Pleitez*, 876 F.3d at 159. This counsels in favor of finding the Article 17.151 deadline to be a "critical stage" of proceedings. *See id.*[10]

---

[9] While Rivera Castelan was appointed counsel 76 days after he requested an attorney, that counsel was wholly ineffective, and Rivera Castelan now asserts a malpractice claim against him for his plainly deficient performance. ROA.532–33, ¶¶ 54–58.

[10] This conclusion is not at odds with *United States v. Portillo*, 969 F.3d 144 (5th Cir. 2020), where this Court held that a defendant's initial appearance was not a "critical stage" of proceedings. *Id.* at 161. *Portillo* explained that the hearing was not critical to the *defendant's* proceedings because he had been advised by the magistrate not to discuss the facts of his case and voiced his intention to retain a private attorney. *Portillo*, which did not cite or discuss *Coleman*, did not
(continued…)

40

### a) The ability to seek release under Article 17.151 affected Rivera Castelan's "substantial rights."

The Article 17.151 deadline is a critical stage of proceedings because it is a stage where the "substantial rights of the accused may be affected." *McAfee*, 630 F.3d at 391. It is well-established that the "traditional right to freedom before conviction permits the unhampered preparation of a defense and serves to prevent the infliction of punishment prior to conviction." *Stack v. Boyle*, 342 U.S. 1, 4–6 (1951). "Unless this right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning." *Id.*; *see also Jauch v. Choctaw County*, 874 F.3d 425, 433–34 (5th Cir. 2017) (under English common law, "the right to a speedy trial and the privilege to petition for habeas relief (and thus bail) protected unconvicted criminal defendants from lengthy pre-trial detention, even while the court was out of term").

Having to petition for bail without the assistance of counsel likewise creates a real threat of "tangible adverse consequences as to

---

purport to speak more broadly regarding other proceedings involving different factual situations or to hold categorically that initial hearings can never be considered critical stages.

the ultimate disposition of [a] criminal case." *Booth*, 2019 WL 3714455, at *13. For example, incriminating statements made "by a defendant to meet bail requirements may be admissible against him at trial." *United States v. Dohm*, 618 F.2d 1169, 1174 (5th Cir. 1980). It thus is necessary for an individual to speak with counsel about "the pros and cons associated with waiving the right against self-incrimination *before* determining whether to speak his mind at an initial bail hearing" or in a petition for release. *Booth*, 2019 WL 3714455, at *13; *see Torres v. Collins*, 2023 WL 6166523, at *11 (E.D. Tenn. Sept. 21, 2023) (Corker, J.) ("[A] bail hearing is a 'critical stage' of the criminal prosecution" because, without the assistance of counsel, "there is a reasonable probability that an arrestee's case can suffer significant consequences."); *see also Booth v. Galveston County*, 352 F. Supp. 3d 718, 739 (S.D. Tex. 2019) (citing "empirical research which indicates that case outcomes for pretrial detainees are much worse—in terms of an increased likelihood of conviction and harsher sentences—than for those who are released pending trial").

The importance of individuals' ability to petition for release or a reduced bond under Article 17.151 is further reinforced by Texas's

42

statutory scheme. Through Article 17.151, the Texas Legislature "embrac[ed] the presumption of innocence" so that "an accused as yet untried and unreleased on bond will not suffer the incidental punitive effect of incarceration." *Jones v. State*, 803 S.W.2d 712, 716 (Tex. Crim. App. 1991); *see also Gill*, 413 S.W.3d at 432 ("We are troubled that a judge may order the indefinite detention of an uncharged accused on an offense the State is not ready to bring to trial . . . It apparently troubled the Legislature as well. Article 17.151 was the remedy.").

Further, finding that the Article 17.151 deadline for release or reduced bond is a critical stage of proceedings is also consistent with case law from around the country holding that the opportunity to seek bail is a critical stage of proceedings. *See, e.g.*, *Coleman*, 399 U.S. at 9; *Betschart v. Oregon*, 103 F.4th 607, 624 (9th Cir. 2024) (affirming district court determination that bail hearing was "critical stage" of proceedings); *Ditch v. Grace*, 479 F.3d 249, 253 (3d Cir. 2007); *Higazy*, 505 F.3d at 172; *Smith*, 923 F.2d at 1319–20; *see also Luckey v. Harris*, 860 F.2d 1012, 1018 (11th Cir. 1988) (plaintiffs stated constitutional claim where they "alleged that systemic delays in the appointment of counsel deny them their sixth amendment right to the representation of

43

counsel at critical stages in the criminal process, hamper the ability of their counsel to defend them, and effectively deny them their eighth and fourteenth amendment right to bail"); *Caliste v. Cantrell*, 329 F. Supp. 3d 296, 314 (E.D. La. 2018) (opportunity to seek bail is "critical stage" because "[t]here is no question that the issue of pretrial detention is an issue of significant consequence for the accused"). For these reasons, the Court should hold that the passage of Rivera Castelan's Article 17.151 deadline was a critical stage of his criminal proceedings.

> **b)    Taylor fails to rebut the weight of authority showing that the Article 17.151 deadline is a critical stage of proceedings.**

Taylor's argument that Rivera Castelan fails to allege a Sixth Amendment violation is brief. Specifically, he contends that: (1) a 75-day delay in appointing counsel does not, on its own, violate the Sixth Amendment; and (2) Rivera Castelan does not allege that he was forced to participate in a critical stage of his proceedings without the assistance of counsel. Appellant's Br. at 28–30. But beyond attacking

strawman arguments that Rivera Castelan has not made,[11] Taylor misses the point and wholly fails to engage with this Court's precedent.

Underlying Taylor's argument is the assertion that no critical stage of Rivera Castelan's proceedings occurred because Rivera Castelan was not brought before a judge during his detention and instead "simply remained in custody while the appointment process unfolded." *Id.* at 30. This claim—which in effect seeks to use the denial of Rivera Castelan's right to a bail hearing to deprive him of the right to counsel—is contradicted by this Court's decisions in *United States v. Pleitez* and *McAfee v. Thaler*.

In *Pleitez*, this Court held that a defendant is entitled to the assistance of counsel when a court issues a mandatory restitution order, even though no formal hearing has been held. *Pleitez*, 876 F.3d at 159. The Court found especially critical that the statutory scheme required the district court to "provide a criminal defendant with an opportunity to be heard before imposing mandatory restitution." *Id.* at 159–60.

---

[11] Taylor spills much ink arguing that the delay in appointing counsel to Rivera Castelan on its own, without regard to whether a critical stage occurred, does not violate the Sixth Amendment. Appellant's Br. at 27–28. But Rivera Castelan did not pursue that argument in the district court, nor does he rely on it now.

Because counsel was necessary "to confront the Government in the sentencing process" and to assist the defendant in vindicating his rights, the Court found that the issuance of the mandatory restitution order constituted a "critical stage" requiring the presence of counsel. *Id.*

Similarly, in *McAfee*, this Court held that "the motion for new trial, during the post-trial, pre-appeal period, is a critical stage" of proceedings. *McAfee*, 630 F.3d at 391. The Court explained that a defendant must have the assistance of counsel during this period to help them prepare such a motion, should they choose to file one. *Id.* at 392–93. The Court further noted that, while a defendant could potentially raise the same arguments in a subsequent habeas petition, that would be problematic because "not only will the defendant have spent time in prison awaiting the opportunity to press the claim, he or she will have to do [so] without the assistance of counsel in pursuing it." *Id.* at 393.

*Pleitez* and *McAfee* show why the period at which a person in custody in Texas can move for release under state law pursuant to Article 17.151 is also a critical stage of the proceedings. Just as in *Pleitez*, the statute here is plainly intended to "provide a criminal

46

defendant with an opportunity to be heard" if they contend they should be released under Article 17.151. *Pleitez*, 876 F.3d at 159–60; *see Castellano*, 321 S.W.3d at 762 ("The Legislature couched [Article] 17.151 in unmistakably mandatory terms: '[I]f the State is not ready for trial within [the applicable deadline] . . . the trial court has two options: release upon personal bond or reduce the bail amount.'"); Tex. Code Crim. Proc. Art. 11.31 ("The person on whom the writ [of habeas corpus] is served shall bring before the judge the person in his custody.").

As in *McAfee*, the statutory deadline under Article 17.151 is a critical stage at which individuals are entitled to have counsel present. Because "freedom before conviction permits the unhampered preparation of a defense and serves to prevent the infliction of punishment prior to conviction," it is imperative that individuals receive the assistance of counsel to pursue this right. *Stack*, 342 U.S. at 4–6. Likewise, while Rivera Castelan could seek release later in his proceedings, as in McAfee, this is impermissible because he will both "have spent time in prison awaiting the opportunity to press the claim" and have had to wait until he was eventually appointed counsel who could help him pursue that relief. *McAfee*, 630 F.3d at 393.

47

As these cases confirm, this Court has never limited the scope of critical stages to instances where a defendant "appear[s] before a judge," is "interrogated," or "required to enter [a] plea." Appellant's Br. at 30. Taylor points to no authority suggesting otherwise. Indeed, both *Pleitez* and *McAfee* make clear that the right to counsel is even *more* important where a lack of counsel may *prevent* an individual from participating in a critical stage of proceedings. Fundamental to the decision in *Pleitez* was that the statutory scheme governing restitution required that a defendant be given "an opportunity to be heard." *Pleitez*, 876 F.3d at 159. And it was the failure to provide that opportunity to the defendant by appointing him counsel that violated his Sixth Amendment rights. *Id.* Likewise, in *McAfee*, this Court held that the Sixth Amendment creates a right to counsel in pursuing a motion for new trial "during the post-trial, pre-appeal period" following a conviction. 630 F.3d at 393. Without counsel to help prepare such a motion, a defendant may effectively be denied the ability to file it at all. *See id.*

This reasoning applies equally here. Texas law plainly contemplates that an individual be given an opportunity to seek release

under Article 17.151 where they have been detained without charge for the applicable statutory period. *See Cardenas*, 631 S.W.3d at 762. Just like the defendant in *Pleitez*, Rivera Castelan was "entitled to the assistance of an attorney" to "play[] the adversarial role necessary to ensure that" any proceeding under Article 17.151 was "fair." *Pleitez*, 876 F.3d at 160. That Rivera Castelan was prevented from initiating Article 17.151 proceedings because he was not appointed counsel does not change this.[12] And any suggestion by Taylor that the government can prevent a critical stage from occurring by simply failing to appoint counsel, thus preventing a defendant from effectively vindicating their rights through a hearing, is fundamentally incompatible with this Court's precedent and the Sixth Amendment. *See Pleitez*, 876 F.3d at 159 (that counsel was not appointed and hearing was not held when court issued restitution order did not prevent critical stage from occurring).

At bottom, Taylor's appeal fails because he ignores the key issue in this case: whether the Article 17.151 deadline is a critical stage of

---

[12] If anything, this confirms that Rivera Castelan was effectively forced to "waive [his] rights," something which Taylor appears to concede would constitute a critical stage of proceedings. Appellant's Br. at 30.

49

proceedings. As explained above, it is. Taylor fails to dedicate even a sentence to that question, instead resting on the bare and conclusory claim that Rivera Castelan has not "allege[d] that he was compelled to participate in any critical-stage proceeding without counsel." Appellant's Br. at 30. This assertion is incorrect and refuted by clear precedent confirming that an Article 17.151 deadline is a critical stage of proceedings. Taylor's arguments should be rejected.

### 2. Taylor is liable for causing Rivera Castelan to be deprived of his Sixth Amendment rights.

Taylor is subject to liability for failing to timely transmit Rivera Castelan's appointment of counsel paperwork and for failing to implement policies ensuring that such paperwork would be transmitted in a timely manner, thus causing him to be deprived of his right to counsel. ROA.549–552 ¶¶ 124–36. Officers are subject to liability under Section 1983 for adopting or failing to adopt policies if doing so (i) "causally results in a constitutional injury" and (ii) the officers acted with "deliberate indifference," or a "disregard [for] a known or obvious consequence of [their] actions." *Crittindon*, 37 F.4th at 186 (alterations in original). Rivera Castelan adequately pleads both elements.

### a) Taylor caused Rivera Castelan's constitutional injury.

A plaintiff shows causation by alleging that an official "breaches a duty imposed by state or local law, and this breach causes plaintiff's constitutional injury." *Sims v. Adams*, 537 F.2d 829, 831 (5th Cir. 1976); *see Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981) (similar). Causation also is satisfied where a "supervisor personally was involved in the constitutional violation or [] there is a sufficient causal connection between the supervisor's conduct and the constitutional violation." *Parker v. LeBlanc*, 73 F.4th 400, 405 (5th Cir. 2023).

Rivera Castelan easily satisfies this requirement. The complaint explains in detail Taylor's role and responsibilities at the Val Verde Processing Center, his duty under state law to transmit appointment paperwork, and his failure to comply with that duty, both by failing to transmit Rivera Castelan's paperwork and failing to implement policies ensuring it would be transmitted in a timely manner to the Lubbock Private Defenders' Office. ROA.527 ¶¶ 33–34; ROA.531 ¶ 50; ROA.549–52 ¶¶ 124–36. Rivera Castelan further alleges exactly how this deprived him of his right to counsel. ROA.550, ¶¶ 129–32. This is sufficient to establish causation. *See Parker*, 73 F.4th at 405 (allegations referencing

51

reports of widespread constitutional harm sufficient to state claim that defendant "implemented deficient policies"); *Sims*, 537 F.2d at 832 (plaintiffs established causation where they alleged mayor and police chief breached city charter and caused them to suffer constitutional harm); ROA.854.

Taylor argues that Rivera Castelan fails to identify "specific policies" that he is challenging, but he ignores that Rivera Castelan's claim is based on *both* Taylor's personal failure to transmit his paperwork *and* Taylor's failure to adopt policies ensuring Rivera Castelan's paperwork would be transmitted. *See Crittindon*, 37 F.4th at 186 (recognizing theory of liability against supervisors for their "failure to adopt policies"); ROA.586 (finding Rivera Castelan's allegations "sufficient to reasonably infer [Taylor's] personal involvement"). The former is sufficient on its own to satisfy causation, and Taylor fails to meaningfully argue otherwise, instead relying on an unsupported assertion that Rivera Castelan's allegations are insufficient. Regarding the latter, it is unclear how Rivera Castelan can more specifically describe a policy that does not exist. Even construing Rivera Castelan's claim as alleging that Taylor adopted *deficient* policies, Rivera Castelan

adequately alleges that the policies and practices Taylor had in place were insufficient to ensure that appointment paperwork was timely transmitted. ROA.531, 550 ¶¶ 50, 129.

The cases Taylor cites do not change this. For example, in *Jones v. Lumpkin*, 2024 WL 1994279 (5th Cir. May 6, 2024), this Court affirmed dismissal of a handwritten complaint consisting of seven sentences that failed to even reference the defendant beyond simply naming him and claiming that he directed others to violate his rights. *Id.* at \*1; *see Jones v. Lumpkin*, No. 2:23-cv-152 (S.D. Tex. Jan. 23, 2023), ECF No. 1 at 3–4. The allegations in the present complaint are significantly longer and much more detailed, making *Jones* wholly distinguishable. ROA.549–552 ¶¶ 124–136.

Taylor similarly cites other cases holding that a plaintiff must do more than recite the legal elements of a claim. Appellant's Br. at 19–20 (citing *Parker v. Blackwell*, 23 F.4th 517 (5th Cir. 2022) and *Westfall v. Luna*, 903 F.3d 534 (5th Cir. 2018)). Yet one of those cases was decided at the summary judgment stage and does not address which allegations a plaintiff must plead to state a claim. *See Westfall*, 903 F.3d at 539. The other, *Parker v. Blackwell*, is not remotely comparable. While

Taylor cites *Blackwell* for its general statements of law, he does not even attempt to analogize the allegations there, which even a cursory review reveals are far shorter and less detailed than Rivera Castelan's complaint. *See, e.g.*, *Parker v. Blackwell*, No. 9:18-cv-225 (E.D. Tex. Feb. 28, 2019), ECF No. 14 (eight-page complaint lacking any factual, non-conclusory allegations regarding the appealing defendant). In any event, both cases are distinguishable because they involved claims for failure to train, which Rivera Castelan does not allege here.

### b)   Taylor acted with deliberate indifference.

A plaintiff satisfies the deliberate indifference requirement for supervisory liability by alleging a "pattern of similar constitutional violations" that "permit[] the inference that Defendants deliberately chose policies causing violations of constitutional rights." *Crittindon*, 37 F.4th at 186. For example, a defendant is deliberately indifferent where they know about a public study documenting frequent constitutional violations within a prison system yet fail to take action. *See id.* Reports, news coverage, and comments by government officials also can establish deliberate indifference. *See, e.g.*, *Parker*, 73 F.4th at 405 (considering

54

similar allegations in finding officers deliberately indifferent to plaintiffs' constitutional rights).

Rivera Castelan adequately alleges that Taylor acted with deliberate indifference to his constitutional rights. Taylor was well-aware that appointment paperwork was not being transmitted in a timely manner. The Lubbock Private Defenders Office sent Taylor and the Val Verde Processing Center operators "repeated notices" stating that it was "missing necessary paperwork for large numbers of people processed through the" Val Verde Processing Center. ROA.530, ¶ 45; *see also* ROA.535, ¶ 69. In or around September 2021, the Lubbock Private Defenders Office "discovered that they had not received necessary paperwork for approximately 80 individuals who had been arrested weeks prior" and subsequently "contacted the Val Verde Processing Center for the documentation." ROA.535–36, ¶ 70.

Taylor also had notice that the delay in transmitting paperwork was causing constitutional harm. It was widely reported in local and national media that individuals arrested under Operation Lone Star in Kinney County were being held without charges and without legal authority. ROA.536, ¶ 71. The Texas Tribune specifically reported that,

55

of the hundreds affected, "dozens" had not yet been appointed counsel. ROA.536, ¶ 71. This was confirmed by Kinney County Judge Shahan, who told the Washington Post "every one of them is going to have an attorney, but we have to catch up." ROA.537, ¶ 74; *see also* ROA.537, ¶ 75 (describing public statements from Kinney County Attorney Smith stating that the situation was a "mess").

This is more than sufficient to establish deliberate indifference. In *Parker v. LeBlanc*, this Court held that (i) a 2017 legislative audit report regarding prison release processes in Louisiana, (ii) a single editorial article published in a newspaper, and (iii) testimony by state employees admitting to widespread overdetention in a civil lawsuit established a pattern of similar constitutional violations. *Parker*, 73 F.4th at 405; *see also McNeal v. LeBlanc*, 90 F.4th 425, 432 (5th Cir. 2024) (plaintiffs adequately alleged deliberate indifference where defendants knew of legislative audit report and testimony from state employees regarding widespread overdetention, and defendants were contacted by "multiple public officials . . . regarding overdetained prisoners"). Rivera Castelan alleges more than was deemed adequate in *Parker*, and Taylor does not argue otherwise.

56

**B.     Rivera Castelan's Sixth Amendment right to counsel was clearly established.**

The second prong of the qualified immunity analysis asks "whether the right in question was clearly established at the time of the alleged violation, such that the officer was on notice of the unlawfulness of his or her conduct." *Cole v. Carson*, 935 F.3d 444, 451 (5th Cir. 2019). The "touchstone" of the clearly established requirement is "fair warning: [t]he law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'" *Crittindon*, 37 F.4th at 186. The Court also "may rely on decisions from other circuits to the extent that they constitute a robust consensus of cases of persuasive authority." *Id.*

As explained above, this Court's decisions in *Pleitez* and *McAfee* make clear that a critical stage may arise where a defendant is entitled to an opportunity to be heard, even if the defendant cannot be heard without the assistance of counsel and no hearing actually occurs. *See* Section II.A.1, *supra*. This, combined with unambiguous state law holding that individuals arrested for misdemeanor trespass are entitled

57

to release if they are not charged within 30 days, put Taylor on "fair warning" that his failure to ensure that appointment paperwork was transmitted within 30 days would cause individuals to be deprived of counsel in violation of their constitutional rights.

### 1.    Taylor had fair notice that his conduct was causing constitutional harm.

Based on this Court's precedent, Taylor should have known that his failure to ensure that appointment paperwork was timely transmitted would violate individuals' constitutional rights. In *Jauch v. Choctaw County*, a plaintiff was arrested for a misdemeanor and subsequently held in county jail in pretrial detention without counsel or the opportunity to seek bail or to appear before a judge for 96 days. *Jauch*, 874 F.3d at 428. The plaintiff asserted claims against the county sheriff for violating her due process rights, right to a speedy trial, and right to counsel under the Sixth Amendment. The district court granted summary judgment on all her claims, noting specifically as to her Sixth Amendment claim that "the record reveals that the Plaintiff was not confronted by interrogation or questioning at any point during her detention without counsel present." *Jauch v. Choctaw County*, 2016 WL

5720649, at *4 (N.D. Miss. Sep. 30, 2016), *rev'd.* 874 F.3d 425 (5th Cir. 2017).

This Court reversed and held that, instead, the *plaintiff* was entitled to summary judgment on her due process claim.[13] *Jauch* explained that, since the time of the English common law, individuals who are arrested cannot be "committed to a purgatory where [their] rights and protections are out of reach, the Constitution made to wait." *Jauch*, 874 F.3d at 434. Indeed, for hundreds of years, the law has unequivocally "condemned a system under which defendants had been long detained in prison, in such cases where by law they are bailable." *Id.* at 433. The Court thus held that the sheriff, who had detained the plaintiff unlawfully and denied her access to counsel and the ability to seek bail, had unquestionably violated the plaintiff's constitutional rights. *Id.* at 436 ("Either [the sheriff] is plainly incompetent, or he knowingly violated the law.").

---

[13] While the Court addressed only the plaintiff's due process claims, it explained that this was because the due process violations necessarily caused the plaintiff to be deprived of her right to counsel and her right to seek bail, making revisiting those claims unnecessary. *See Jauch*, 874 F.3d at 435 & n.9.

59

*Jauch* provides more than "fair warning" that a jailer cannot hold a person in jail without lawful authority and without counsel or the ability to seek bail. As explained above, Taylor was responsible for transmitting the appointment paperwork required for Rivera Castelan to be appointed counsel under state law. *See* Section I.B, *supra.* By failing to do so or ensure that this happened, Taylor necessarily prevented Rivera Castelan and many others from being appointed counsel who could have helped them invoke their rights to release on bond under Article 17.151. This is exactly what *Jauch* condemned when it stated that "heaping [the] consequences [of pretrial detention] on an accused and blithely waiting months before affording [him] access to the justice system is patently unfair." *Id.* at 434.

There can be no doubt that Taylor was aware that his failure to ensure that appointment paperwork was timely transmitted was depriving numerous individuals of counsel at their Article 17.151 deadlines. Not only is the law on this issue crystal clear, but there was widespread reporting of it, and several Kinney County officials publicly acknowledged it. *See Cardenas*, 631 S.W.3d at 761–62 (Article 17.151 "mandates release"); ROA.536 ¶ 71–73 (local and national media

60

reported on individuals being held in jail past their release date under Article 17.151 and without counsel being appointed). Further, Taylor received frequent notice from the Lubbock Private Defenders' Office stating that individuals' appointment paperwork was missing. ROA.530, ¶ 45. Taylor knew he was preventing individuals from enlisting counsel to secure their release, and his "inaction was objectively unreasonable in light of" clearly established law. *Crittindon*, 37 F.4th at 188. Taylor is not entitled to qualified immunity.

### 2. Taylor's counterarguments that he has not violated a "clearly established" right fail.

Taylor argues that he has not violated clearly established law for three reasons.[14] None passes muster.

First, Taylor contends that the delay in transmitting Rivera Castelan's appointment paperwork was "not objectively unreasonable" because the volume of arrests made under Operation Lone Star made "perfect administrative compliance" with the Constitution "impossible." Appellant's Br. at 37–38. This is wrong. Unlike the right to due process,

---

[14] Rivera Castelan does not respond to Taylor's fourth argument—that the law does not clearly establish that a delay in appointing counsel on its own, without regard to whether a critical stage occurred, violates the Sixth Amendment—because it relates to a claim that Rivera Castelan does not assert. Appellant's Br. at 33–34.

the Sixth Amendment right to counsel does not account for the burdens of government compliance; if counsel is required, counsel must be provided, regardless of whether providing it is costly or burdensome. *See Argersinger v. Hamlin*, 407 U.S. 25, 40 (1972) (extending Sixth Amendment right to counsel to misdemeanor prosecutions despite "overworked officials" and overwhelmed criminal system).

Also, unlike a natural disaster that destroyed a prison's telephone systems, like in *Waganfeald v. Gusman*, the "conditions" here were entirely manmade. *Waganfeald v. Gusman*, 674 F.3d 475, 485 (5th Cir. 2012) (right to use cellphones to contact counsel after prison telephones became "inoperable" during Hurricane Katrina not clearly established). There was nothing preventing Taylor from implementing policies ensuring that appointment paperwork was timely transmitted other than the fact that more people were arrested than Kinney County had resources to prosecute. But that is no excuse for violating an individual's constitutional rights. To the contrary, it is well-established that the Constitution requires *greater* care when the government declares an emergency. *See United States v. Robel*, 389 U.S. 258, 264 (1967) ("It would indeed be ironic if, in the name of national defense, we

would sanction the subversion of one of those liberties . . . which makes the defense of the Nation worthwhile.”).

As explained by Judge Pulliam, “[g]overnmental entities may not infringe on the constitutional right to counsel by creating circumstances that in turn create a shortage of attorneys or by fostering an environment that does not adequately protect the right to counsel for those arrested.” ROA.852. And it is doubtful that any court could seriously entertain a defense that the government arrested too many people to be able to feed, so it was not unconstitutional to let them starve to death. In any event, nothing in the record suggests that it was impossible or impractical to timely transmit paperwork; to the contrary, the record reflects that this could be completed quickly by email. ROA.531–32 ¶¶ 52–53.

Second, Taylor ignores clearly established law confirming that the absence of a hearing, as opposed to a hearing itself, can constitute a “critical stage” of proceedings. Appellant’s Br. at 34–35; *see Pleitez*, 876 F.3d at 159–60 (issuance of mandatory restitution order without providing defendant opportunity to object violated his Sixth Amendment right to counsel); *McAfee*, 630 F.3d at 391–93 (same where

63

defendant was not provided counsel to help prepare a motion for new trial during the post-trial, pre-appeal period). Moreover, as this Court explained in *Jauch*, it is well-established that "[p]rolonged pre-trial detention without the oversight of a judicial officer and the opportunity to assert constitutional rights is facially unfair." *Jauch*, 874 F.3d at 434. Rivera Castelan had an unqualified right to seek release before a judge under Article 17.151; that Taylor prevented him from doing so by depriving him of counsel for 76 days only further confirms that his conduct was objectively unreasonable. As this Court has made clear, "any reasonable official would understand that the Constitution forbids confining criminal defendants for a prolonged period (months in this case) prior to bringing them before a judge." *Id.* at 436.

Third, Taylor's contention that there is no clearly established law holding that a jail administrator can be held liable for the violation here is incorrect. In *Brooks*, this Court found that a sheriff's conduct as a supervisory policymaker supported a *Monell* claim where the sheriff failed "to keep records of work performed by pretrial detainees and to transmit those records to" another entity as required by state law. *Brooks*, 84 F.3d at 165. That is exactly what Rivera Castelan alleges

Taylor did here: failure to ensure that his appointment paperwork was transmitted to the Lubbock Private Defenders' Office as required by state law. In doing so, Taylor had "fair warning" that not transmitting Rivera Castelan's appointment paperwork would violate his constitutional rights.

## CONCLUSION

For the reasons explained above, Taylor's appeal should be denied.

February 9, 2026                    Respectfully submitted,

                                    */s/ Celin Carlo-Gonzalez*

                                    David A. Donatti
                                    Carolina Rivera Nelson
                                    Savannah Kumar
                                    AMERICAN CIVIL LIBERTIES
                                    UNION OF TEXAS
                                    P.O. Box 8306
                                    Houston, TX 77288

                                    Stanley Young
                                    Robert Haslam
                                    Dominic Booth
                                    Covington & Burling LLP
                                    3000 El Camino Real
                                    Palo Alto, CA 94306
                                    (650) 632-4704

                                    Darren Teshima
                                    Angela Gasca

Covington & Burling LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105
(415) 591-6000

Celin Carlo-Gonzalez
Covington & Burling LLP
30 Hudson Yards
New York, NY 10001
(212) 841-1000

Dong Hyun Lee
Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-6000

*Counsel for Plaintiff-Appellee*

# CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 27(d) because this brief contains 12,984 words, excluding the parts of the brief exempted by Fed. R. App. P. 27(a)(2)(B).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

*/s/ Celin Carlo-Gonzalez*
Celin Carlo-Gonzalez

## CERTIFICATE OF SERVICE

I hereby certify that an electronic copy of the above and foregoing has been served on all counsel of record through filing in this Court's CM/ECF electronic filing and notice system on February 9, 2026.

*/s/ Celin Carlo-Gonzalez*
Celin Carlo-Gonzalez